IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| EDGIO, INC., *et al.*,[1] | : | Case No. 24-11985 (KBO) |
| | : | (Jointly administered) |
| | : | |
| Debtors. | : | Re: D.I. 109 |
| | : | Hearing Date: October 15, 2024 at 10:00 a.m. |
| | : | Obj. Deadline: October 8, 2024 at 4:00 p.m. |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF MILBANK LLP AS COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE**

Andrew R. Vara, United States Trustee for Region 3 (the "U.S. Trustee"), through his undersigned counsel, objects to the *Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Milbank LLP* ("Milbank") *as Counsel for the Debtors and Debtors in Possession* Nunc Pro Tunc *to the Petition Date* [D.I. 109] (the "Application"), and in support of his objection respectfully states:

**PRELIMINARY STATEMENT**

Due to its continuing representation of the Debtors' current and former officers and directors as defendants in both the Arizona Class Action and the Consolidated New York Derivative Actions (subsequently defined herein), Milbank represents interests adverse to the estate and, as such, is not eligible to be retained under Section 327(a) of the Bankruptcy Code.

---

[1] The Debtors operate under the trade name Edgio and have previously used the trade names Limelight, Edgecast and Layer0. The Debtors in these chapter 11 cases (the "Chapter 11 Cases"), along with the last four digits of each Debtor's federal tax identification number, are: Edgio, Inc. (7033); Edgecast Inc. (6704); Edgio International, Inc. (3022); Limelight AcquisitionCo, Inc. (6138); Limelight Midco, Inc. (1120); Limelight Networks VPS, Inc. (3438); and Mojo Merger Sub, LLC (0056). The Debtors' service address for purposes of these Chapter 11 Cases is: 11811 N. Tatum Blvd., Ste. 3031, Phoenix, AZ 85028. Additional information about the Chapter 11 Cases is available at https://OmniAgentSolutions.com/Edgio/

1

Accordingly, the Application should be denied.

**JURISDICTION & STANDING**

1. Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and resolve this objection.

2. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with monitoring the federal bankruptcy system. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog"). The U.S. Trustee is specifically authorized to monitor retention applications filed under 11 U.S.C. § 327 and, whenever the U.S. Trustee deems it appropriate, to file comments about such applications with the Court. *See* 28 U.S.C. § 586(a)(3)(I).

3. The U.S. Trustee has standing to be heard on the Application pursuant to 11 U.S.C. § 307. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that 11 U.S.C. § 307 gives the U.S. Trustee "public interest standing").

**BACKGROUND**

4. On September 9, 2023, the above-captioned debtors (the "Debtors") filed chapter 11 petitions in this Court (the "Petition Date").

5. In support of the first-day relief, the Debtors submitted the *Declaration of Todd Hinders in Support of Chapter 11 Petitions and First Day Motions of Edgio, Inc., et al.* (the "Hinders Declaration") [D.I. 3].[2]

---

[2] There was no disclosure of the Arizona Class Action or the Consolidated New York Derivative Action in the Hinder Declaration.

6. On September 20, 2024, the U.S. Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") [D.I. 98].

7. On September 24, 2014, the Debtor filed a number of professional retention applications, including the Application. Through the Application, the Debtors seek an order authorizing the employment and retention of Milbank, *nunc pro tunc* to the Petition Date, as their attorneys in these Chapter 11 Cases.

8. In support of this Application, the Debtors submitted (a) the declaration of Tyson Lomazow, a partner at Milbank, (the "Lomazow Declaration") and (b) the declaration of Richard Diegnan, the Debtors' Chief Legal Officer and Corporate Secretary, (the "Diegnan Declaration").

9. In particular, Mr. Lomazow states that:

> As disclosed on Schedule 2, Milbank represents Edgio, Inc. (one of the Debtors) in a securities class action and derivative actions filed in the United States District Court for the District of Arizona and the United States District Court for the Eastern District of New York, respectively. **This representation is a joint representation with certain current and former directors and officers of Edgio, Inc., including Walter D. Amaral, Doug Bewsher, Daniel Boncel, Stephen Cumming, Marc Debevoise, Jeffrey Fisher, Scott A. Genereux, Patricia Parra Hadden, Dianne Ledingham, Robert A. Lyons, David C. Peterschmidt, Reed B. Rayman, and E-Fei Wang.** Milbank's joint representation of Edgio, Inc. with certain of its current and former directors and officers is not adverse to the Debtors or their estates. Accordingly, I do not believe that Milbank's representation of these current and former directors precludes Milbank from meeting the disinterestedness requirement of section 327 of the Bankruptcy Code.

Lomazow Decl. ¶ 21 (emphasis added).

10. The Edgio, Inc. quarterly report filed with the Securities Exchange Commission on and dated November 16, 2023, pursuant to Section 13 or 15(D) of the Securities Exchange Act of 1934 for the period ended September 30, 2023 ("Edgio 10-Q") further describes these legal proceedings:

3

On April 25, 2023, a stockholder filed a complaint in the United States District Court for the District of Arizona a complaint *captioned Mehran Esfandiari et al. v. Edgio, Inc. et al.,* Case No. 2:23-cv-00691 (D. Ariz.), against the company, and certain current and former officers (the "Class Action Complaint"). The Class Action Complaint includes two claims: (1) violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act")and Rule 10b-5 promulgated thereunder (against all defendants); and (2) violation of Section 20(a) of the Exchange Act (against the individual defendants).The Class Action Complaint alleges that the defendants made materially false and/or misleading statements and failed to disclose material facts concerning accounting and internal controls regarding the company's Open Edge arrangements. The Class Action Complaint seeks compensatory damages, including interest thereon, costs and expenses.

Edgio 10-Q at p. 53 (the "Arizona Class Action") (See Ex "A").

On August 23, 2023, a stockholder filed a complaint in the Eastern District of New York captioned *Joel Rosenfeld, derivatively on behalf of Edgio, Inc., v. Walter D. Amaral, et al.*, 23-cv-6323 (E.D.N.Y.). Plaintiff alleges that the Edgio board of directors violated its fiduciary duties, or aided and abetted one another in the breach of those duties, in connection with the same financial restatement issues raised in Arizona Class Action Complaint. Plaintiff also claims that the board violated the securities laws under Section 14(a) of the Exchange Act, alleging that the company's 2022 Proxy Statement contained inaccurate statements about the company's internal controls and material risks. This action seeks restitution, contribution or indemnification from the board for any violations of the federal securities laws in the Arizona Class Action Complaint, an order directing the company to take all necessary actions to reform and improve its internal controls and board oversight, damages with pre- and post-judgment interest, disgorgement of profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the board, and costs and expenses.

Edgio 10-Q at p. 53 (the "Rosenfeld Derivative Action") (See Ex "A").

      11.     In addition to the Rosenfeld Derivative Action the following verified shareholder derivative complaints were also filed:

a. On November 17, 2024, Plaintiff Patrick Rooney filed a Verified Shareholder Derivative Complaint against Walter D. Amaral, Doug Bewsher, Daniel Boncel, Stephen Cumming, Scott A. Genereux, Patricia Parra Hadden, Dianne Ledingham, Robert Lyons, David C. Peterschmidt, Reed B. Rayman and E-Fei Wang along with nominal defendant Edgio, Inc., for breaches of their fiduciary duties as directors and/or officers of Edgio, unjust enrichment, abuse of control, gross mismanagement,

4

waste of corporate assets, violations of Section 14(a) of the Securities Exchange Act of 1934 and for contribution under Sections 10(b) and 21D of the Exchange Act.[3]

b. On January 19, 2024, Plaintiff Lewis Baker (the "Baker Derivative Action"), filed a Verified Shareholder Derivative Complaint against nominal defendant Edgio, Inc. f/k/a Limelight Networks, Inc. and against certain current and former executive officers and members of the Company's Board of Directors including Walter Amaral, Doug Bewsher, Scott Genereux, Patricia Parra Hadden, Dianne Ledingham, Robert Lyons, David Peterschmidt, Reed Rayman, E-Fei Wang, Jeffrey Fisher, Marc Debevoise, Stephen Cumming, and Daniel Boncel for breaches of fiduciary duties, unjust enrichment, waste of corporate assets, and violations of Sections 10(b) of the Securities Exchange Act of 1934. The Baker Derivative Action was brought on behalf of Edgio against these individual defendants for, among other things, breaching their fiduciary duties to the Company and its stockholders by intentionally or recklessly making or permitting the dissemination of materially false and misleading statements and omissions regarding the Company's business, operations, and prospects.

12. These related Derivative Actions have been consolidated for all purposes, including pre-trial proceedings and trial, under the Rosenfeld Derivative Action Case No. 1:23-cv-06323 (the "Consolidated New York Derivative Action") (See Ex. "B").

*The Arizona Class Action*

13. The Arizona Class Action was filed on April 25, 2023.

14. On January 17, 2024, Milbank filed its Notice of Appearance as co-counsel of record for Edgio, Inc. f/k/a Limelight Networks, Inc., Robert Lyons, Daniel Boncel and current CFO Stephen Cumming. Arizona Class Action at D.I. 29 (See Ex. "C").

15. On March 11, 2024, Milbank, along with co-counsel, filed the Defendants' Motion to Dismiss the Amended Complaint. Arizona Class Action at D.I. 37. (See Ex. "D").

---

[3] Defendant Dianne Ledingham is a current Debtor director while Stephen Cumming is the Debtors' current Chief Financial Officer ("CFO")

*The Consolidated New York Derivative Action*

16.     On November 15, 2023, Jed M. Schwartz and George S. Canellos (both Milbank partners) and Nicole D. Valente (a Milbank attorney) filed separate notices of appearance as counsel for Defendants Walter D. Amaral, Doug Bewsher, Scott A. Genereux, Patricia Parra Hadden, Dianne Ledingham, Robert Lyons, David C. Peterschmidt, Reed B. Rayman, and E-Fei Wang and Nominal Defendant Edgio, Inc. in the Consolidated New York Derivative Action.  Consolidated New York Derivative Action at D.I. 7-9.  (See Exs. "E" through "G").

17.     On November 15, 2024, the Plaintiff and the Defendants, by and through counsel, executed a stipulation and [proposed] order to stay the Consolidated New York Derivative Action.  Consolidated New York Derivative Action at D.I. 10.  (See Ex. "H").

18.     In addition to staying the Consolidated New York Derivative Action, the stipulation provided, *inter alia*, that Edgio and each of the Individual Defendants accepted service of the complaint.  The stipulation also provided that that Defendants did not have to respond to the complaint until at least thirty days after the stay is lifted and until a date set by the Court after the Parties submit a proposed scheduling order governing that motion to dismiss, answer, or other response to the operative complaint.  Further, the stipulation provided that the acceptance of service of process and entry into the stipulation did not waive any rights, claims and defenses and that Defendants expressly preserve, all rights, claims and defenses, including (but not limited to, all defenses relating to jurisdiction. *Id* at ¶ 7.  The Stipulation was "So Ordered" on December 21, 2023.  Consolidated New York Derivative Action at D.I. 11. (See Ex. "I").

## ARGUMENT

19. The Application should be denied because Milbank represents interests adverse to the Debtors' bankruptcy estates and, by extension, has a disqualifying conflict of interest.

20. Section 327(a) of the Bankruptcy Code provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327; *see In re Pillowtex, Inc.*, 304 F.3d 246, 250 (3d Cir. 2002) (debtor in possession may, with bankruptcy court approval, employ one or more attorneys to represent it and to assist it in fulfilling its duties).

21. Section 327(a) "restricts retention of lawyers and other professionals to those who do not hold or represent an interest adverse to the estate and are disinterested." *In re Congoleum Corp.*, 426 F.3d 675, 688-89 (3d Cir. 2005). The twin requirements of no adverse interest and disinterestedness "apply at the time of retention and throughout the case." *In re Granite Partners, L.P.*, 219 B.R. 22, 32 (Bankr. S.D.N.Y. 1998).

22. The Bankruptcy Code does not define "adverse interest." *See In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994). In the context of Section 327(a), the Court may consider an interest adverse to the estate "when counsel has 'a competing economic interest tending to diminish estate values or to create a potential or actual dispute in which the estate is a rival claimant.'" *In re First Jersey Sec., Inc.*, 180 F.3d 504, 509 (3d Cir. 1999) (quoting *In re Caldor, Inc.*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996)). Interests are not adverse "merely because it is possible to conceive a set of circumstances under which they might clash."

*In re Leslie Fay Cos., Inc.*, 175 B.R. at 532. "[I]f it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate." *Id.* at 533.

23. Section 327(c) of the Bankruptcy Code provides:

> In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(c).

24. Under Sections 327(a) and (c), the Court: must disqualify an attorney with an actual conflict of interest, may disqualify an attorney with a potential conflict of interest, and may not disqualify an attorney based on the appearance of a conflict alone. *See In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 476 (3d Cir. 1998).

25. The Bankruptcy Code does not define "actual conflict of interest." *See Pillowtex,* 304 F.3d at 251. The term has been given meaning through case-by-case evaluations of particular fact patterns. *See id.* "Pragmatically, a conflict is actual when the specific facts before the bankruptcy court suggest that 'it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest.'" *In re Boy Scouts of America*, 35 F.4th 149, 158 (3d Cir. 2022) (quoting *In re BH & P, Inc.*, 949 F.2d 1300, 1315 (3d Cir. 1991)); *see also In re Empire State Conglomerates, Inc.*, 546 B.R. 306, 315 (Bankr. S.D.N.Y. 2016) ("An actual conflict of interest is 'an active competition between two interests, in which one interest can only be served at the expense of the other.'") (quoting cases). The determination of whether a conflict is actual or potential is within the Court's discretion. *See In re Woodworkers Warehouse, Inc.*, 303 B.R. 740, 742 (Bankr. D. Del. 2004).

26. The Court should generally disapprove retentions involving a potential conflict of interest. *See In re BH & P, Inc.*, 949 F.2d at 1316; *see also In re Woodworkers Warehouse, Inc.*, 303 B.R. at 742 ("In most instances a potential conflict should be the basis for disqualification[.]") (citing *Marvel*, 140 F.3d at 476). The Court should permit retention despite a potential conflict of interest only if every competent professional in the field is already employed in the case, or if the likelihood that the potential conflict will become actual is remote and there are "particularly compelling" reasons to approve the retention. *See In re BH & P, Inc.*, 949 F.2d at 1316 ("We do not find error in the bankruptcy court's articulation of the standard governing conflict of interest applicable to professionals.").

27. "The requirements of section 327 cannot be taken lightly, for they 'serve the important policy of ensuring that all professionals appointed pursuant to [the section] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *In re Leslie Fay Cos., Inc.*, 175 B.R. at 532 (quoting *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994)). "Having to divide one's allegiance between two clients is what Section 327 attempts to prevent." *In re Mercury*, 280 B.R. 35, 54 (Bankr. S.D.N.Y. 2002) (quoting *In re Roger J. Au & Son, Inc.*, 101 B.R. 502, 505 (Bankr. N.D. Ohio 1989)).

28. Here, Milbank represents interests adverse to the bankruptcy estates. The bankruptcy estates own the claims asserted in the Consolidated New York Derivative Action. *See In re RNI Wind Down Corp.*, 348 B.R. 286, 293 (Bankr. D. Del. 2006) ("Upon the filing of a bankruptcy petition, . . . any claims for injury to the debtor from actionable wrongs committed by the debtor's officers and directors become property of the estate under 11 U.S.C. § 541 and the right to bring a derivative action asserting such claims vests exclusively to the trustee ..... This is true regardless of whether the derivative action is brought prior to or after the filing of the

petition."). Milbank represents defendants in the Consolidated New York Derivative Action. The plaintiffs in the Consolidated New York Derivative Action allege, among other things, various breaches of the defendants' fiduciary duties, including breaches of their duties of good faith and loyalty in the management and administration of Edgio's affairs and in the use and preservation of Edgio's assets (Rosenfeld Complaint ¶ 207) and breaches of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, waste of corporate assets, and violations of Section 14(a) of the Securities Exchange Act (Rooney Complaint ¶ 165).

29. The Debtors have a fiduciary duty to protect and maximize the value of the bankruptcy estate's assets—which assets include the claims against Milbank's individual clients in the Consolidated New York Derivative Action. *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004). But Milbank's clients in the Consolidated New York Derivative Action have the opposite interest: they want to minimize their liability on the same claims that the Debtors have a fiduciary duty to maximize. If the Application is approved, Milbank would owe professional responsibilities to clients who are simultaneously trying to maximize and minimize the value of the same claims.

30. Second, it would seem that the individual defendants represented by Milbank have indemnification claims against the Debtors despite any insurance that covers such claims. In other words, Milbank currently represents creditors of the bankruptcy estates who are insiders. Such indemnification claims against the Debtors, among other things, tend to create a dispute in which the estate is a rival claimant because the Debtors have a duty, if a purpose would be served, to "object to the allowance of any claim that is improper[.]" 11 U.S.C. §§ 1106(a)(1), 1107(a), and 704(a)(5). If indemnification claims are allowed, they will tend to diminish the value of the estate by lowering the amount funds available for distribution to other similarly-situated

creditors.

31. For these reasons, Milbank represents competing economic interests tending to diminish the value of the Debtors' bankruptcy estates, or tending to create a potential or actual dispute in which the bankruptcy estate is a rival claimant. *See In re First Jersey Sec., Inc.*, 180 F.3d at 509. Milbank represents interests adverse to the Debtors' estates and has a disqualifying, actual conflict of interest.

32. This case is not unlike a similar situation where Debtor's counsel was disqualified for having an actual conflict of interest due to its simultaneous representation of the debtor and one of the debtor's unsecured creditors that was also a co-obligor with the debtor on a loan. *In re The Harris Agency, LLC,* 462 B.R. 514 (E.D. Pa. 2011).

33. In *Harris Agency*, the District Court affirmed the Bankruptcy Court's disqualification of debtor's counsel where debtor's counsel had entered its appearance for Union One, (i) an unsecured creditor in the chapter 11 case and (ii) a co-obligor with the debtor on a $2.9 million loan. *Id.* at 523. The *Harris Agency* court found that debtor's counsel simultaneous representation of Union One created an interest adverse to the estate. *Id.*

34. Citing *Pillowtex*, the District Court stated that " . . . a conflict is actual, and hence per se disqualifying, if it is likely that a professional will be placed in a position permitting it to favor one interest over an impermissibly conflicting interest." *Harris Agency,* at 524 (citing *Pillowtex*, 304 F.3d at 251).

35. Even if Milbank's conflict of interest were only potential, it should still result in disqualification. Potential conflicts are generally disqualifying. *See In re BH & P, Inc.*, 949 F.3d at 1316. The Court should permit retention despite a potential conflict only if every competent professional in the field is already employed in the case, or if the likelihood that the

11

potential conflict will become actual is remote and there are "particularly compelling" reasons to approve the retention. *See id.* Here, there is no showing that every competent law firm is already employed in this case. Additionally, for the reasons stated herein, there is no showing that the conflict (to the extent it is still only potential) becoming actual is remote.

36. Even if Milbank asserts that it has received a conflict waiver from the Debtors and its clients in the Consolidated New York Derivative Action, such "waivers under § 327(a) are ordinarily not effective." *In re Congoleum Corp.*, 426 F.3d at 692; s*ee In re Granite Partners LP*, 219 B.R. at 34 ("Although the client can, under certain circumstances, waive the conflict, DR 5-105(c), the mandatory provisions of section 327(a) do not allow for waiver."); *In re Perry*, 194 B.R. 875, 880 (E.D. Cal. 1996) ("section 327(a) has a strict requirement of disinterestedness and absence of representation of an adverse interest which trumps the rules of professional conduct."); *In re Decade S.A.C., LLC*, 2022 WL 486952 at ¶ 33 (Bankr. D. Del. Feb. 17, 2022) (chapter 7 trustee's special counsel was on both sides of negotiation and thus in position to favor one interest over another, which created "an actual, non-waivable conflict" requiring special counsel's disqualification); *In re JMK Construction Group, Ltd.*, 441 B.R. 222, 237 (Bankr. S.D.N.Y. 2010) ("Courts have recognized that conflicts waivers are not effective for purposes of satisfying the 'adverse interest' requirement of section 327(a) of the Bankruptcy Code.") (collecting cases); *In re Project Orange Assocs., LLC*, 431 B.R. 363, 374 (Bankr. S.D.N.Y. 2010) (conflict waiver by creditor "cannot trump the requirements of section 327(a)."); *In re B.E.S. Concrete Prods, Inc.*, 93 B.R. 228, 235 (Bankr. E.D. Cal. 1988) ("Although the parties can waive the conflict upon appropriate disclosures, the waiver is more difficult to obtain in a chapter 11 case because the debtor in possession stands in a fiduciary capacity that constrains its ability to make such a waiver.").

37. Nothing in Section 327(a) suggests that the requirement of no adverse interest can somehow be satisfied through conflict waivers. Rather, the Court "has the authority and the responsibility to only approve employment of professionals who meet the minimum requirements set forth in § 327(a), independent of objections." *In re Interwest Business Equip., Inc.*, 23 F.3d 311, 317 (10th Cir. 1994); *see also In re Boomerang Tube, Inc.*, 548 B.R. 69, 75 (Bankr. D. Del. 2016) ("It is the obligation of the Bankruptcy Court to approve the terms of employment of professionals, in accordance with the provisions of the Bankruptcy Code, regardless of the terms articulated in the employment contract. Therefore, if the Court finds that a contract that the Debtor or the Committee negotiated is impermissible, the Court may not approve it or may modify it.").

## CONCLUSION

38. The U.S. Trustee reserves any and all rights, remedies, duties and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this objection, file an appropriate motion or conduct any and all discovery as may be deemed necessary or as may be required, and to assert such other grounds as may become apparent upon, among other things, further factual discovery.

\*\*\*

WHEREFORE, the U.S. Trustee respectfully requests that the Court deny the Application and grant such other relief as the Court deems appropriate and just.

Dated: October 8, 2024  
      Wilmington, DE

Respectfully submitted,

**ANDREW R. VARA**  
**UNITED STATES TRUSTEE,**  
**REGIONS 3 & 9**

By: */s/Richard L. Schepacarter*  
    Richard L. Schepacarter  
    Trial Attorney  
    U.S. Department of Justice  
    Office of the U.S. Trustee  
    J. Caleb Boggs Federal Building  
    844 King Street, Suite 2207, Lockbox 35  
    Wilmington, DE 19801  
    (302) 573-6491 (Phone)  
    (302) 573-6497 (Fax)  
    richard.schepacarter@usdoj.gov