REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

IN RESPONSE TO NOTICE OF (I) EFFECTIVE DATE AND ENTRY OF ORDER CONFIRMING
JOINT CHAPTER 11 PLAN OF REORGANIZATION OF EDGIO, INC. AND ITS AFFILIATED
DEBTORS, (II) FINAL ADMINISTRATIVE EXPENSE CLAIM BAR DATE, (III) REJECTION
DAMAGES CLAIM BAR DATE, (IV) PROFESSIONAL FEE CLAIM BAR DATE, AND (V)
REQUIREMENT TO FILE RENEWED REQUESTS FOR NOTICE (DOCKET NO. 1101)

In re                                                              Chapter 11

Edgio Inc. *et al.* - Debtors                                      Case No. 24-11985

Name of the holder of the Administrative Expense Claim:  H5 Rockwell Management, LLC

The asserted amount of the Administrative Expense Claim: $2,940

The basis for the asserted amount of the Administrative Expense Claim is the unpaid
monthly recurring charges ("MRC") that the Debtor owes for the period from April 1, 2025
through April 21, 2025. April 21, 2025 is the date of the Order Authorizing the Debtors to
Reject Certain Contracts and Unexpired Leases (docket #905), which included the
rejection of Debtor's contract with H5 Rockwell Management, LLC through the rejection of
the H5 Data Centers – Chandler, LLC contract.  The main component of the MRC owed by
Debtor is the cost of electricity consumed by Debtor's data center equipment, which is a
cost that H5 Rockwell Management, LLC will have to pay from its own pocket if it is not paid
by Debtor.

The amount of the Administrative Claim Expense was calculated as follows:

- The total MRC due for April 2025 of $4,200 was divided by the number of days in
  April to obtain a pro-rated daily amount of $140 per day: $4,200/30 = $140/day.
- The pro-rated daily rate of $140 was multiplied by 21 days (the number of days in
  April during which Debtor's contract was in effect before the rejection date):
  $140/per day x 21 days = $2,940.
- PLEASE NOTE THAT THE FIRST 21 DAYS IN APRIL WERE ALSO CLAIMED IN PROOF
  OF CLAIM #295.  Please subtract this $2,940 amount from the total claim in proof of
  claim #295.

Supporting documents are attached.


Please contact me by email or phone with any questions.

Bethany House


H5 Rockwell Management, LLC, H5 Data Centers Cleveland LLC, H5 Data Centers
Cleveland #2 LLC, and H5 Data Centers, LLC
9320 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
(818) 653-5001
bethany.house@h5datacenters.com

 **H5 DATA CENTERS**

# INVOICE

H5 Rockwell Management, LLC
1625 Rockwell Avenue
Cleveland, OH 44114

RECEIVED

2025 JUL 18 A 9: 15

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

Invoice Date: 4/1/2025
Invoice Number: 036320
Email for Billing Inquiries: ar@h5datacenters.com

| SITE: 1H5RKW - Cleveland | **ACCOUNT NUMBER: 000939** |
|---|---|

Limelight Networks, Inc.

Account Name: Limelight Networks, Inc.
Payment Terms: Net 30
Payment Due Date: 5/1/2025

| Date | Code | Description | PO Number | Amount | Tax | Total |
|---|---|---|---|---|---|---|
| 4/1/2025 | BIP | Bandwidth/IP | | $150.00 | $0.00 | $150.00 |
| 4/1/2025 | CBR | Colocation Base Rent | | $1,050.00 | $0.00 | $1,050.00 |
| 4/1/2025 | CPR | Colocation Power | | $1,800.00 | $0.00 | $1,800.00 |
| 4/1/2025 | XCC | Cross Connection | | $1,200.00 | $0.00 | $1,200.00 |

|  |  |
|---|---|
| **Total Before Tax** | **$4,200.00** |
| **Sales Tax** | **$0.00** |
| **TOTAL INVOICE AMOUNT DUE** | **$4,200.00** |

**PAYMENT METHODS ARE BELOW:**

| SEND CHECK PAYMENTS TO: | FOR DIRECT DEPOSIT / ACH TRANSFERS: | | FOR WIRE TRANSFERS: | |
|---|---|---|---|---|
| H5 Rockwell Management, LLC | Bank Name: | JPMorgan Chase Bank, N.A. | Bank Name: | JPMorgan Chase Bank, N.A. |
| c/o H5 Cleveland, LLC | Bank Address: | 270 Park Ave | Bank Address: | 270 Park Ave |
| 9320 Wilshire Blvd, Ste 300 | | New York, NY 10017 | | New York, NY 10017 |
| Beverly Hills, CA 90212 | Account Name: | H5 Rockwell Management, LLC | Account Name: | H5 Rockwell Management, LLC |
| | Account Number: | 5130368009 | Account Number: | 5130368009 |
| | Routing Number: | 022000842 | ABA Number: | 021000021 |
| | | | Swift Number: | CHASUS33 |

DocuSign Envelope ID: 765DBF04-9AB8-494E-B5D8-A6877C5F139C



**Service Order Form**
SOF Number: 101528

**Customer:**
Limelight Networks

,

**Customer Address for Notices:**
Name: _____
Address: _____
City, ST Zip: _____
Email: _____

**Customer Address for Billing:**
Name: _____
Address: _____
City, ST Zip: _____
Phone: _____
Email: _____

**Data Center Licensor:**
H5 Cleveland, LLC and H5 Cleveland #2, LLC
1625 Rockwell Avenue
Cleveland, Ohio 44114

**Data Center Licensor Address for Notices:**
H5 Data Centers
9320 Wilshire Blvd., Suite 300
Beverly Hills, CA  90212
Info@h5datacenters.com

| | |
|---|---|
| Account Name: **Limelight Networks** | SOF Type: **Add-on** |
| Contact Name: **Matt Johnson** | SOF Date: **Jun 1, 2022** |

This Service Order Form (this "**SOF**") is being entered into pursuant to that certain Master Services Agreement (the "**MSA**") between Customer and H5 Data Centers LLC ("**H5**") dated _____,_____.  This SOF is governed by and subject to the terms and conditions of the MSA.  Capitalized terms not otherwise defined in this SOF will have the meanings given in the MSA. H5 is signing this SOF for and on behalf of Data Center Licensor and is authorized to do so.  Data Center Licensor shall bear any and all responsibilities, obligations, or liabilities in connection with this SOF, it being understood that H5 is only signing this SOF in order to bind the Data Center Licensor as a party to this SOF.

**Terms and Conditions:**

SOF Term (months):36, renewing as provided in the MSA.

Commencement Date: Jun 8, 2022

Security Deposit:  $ 0.00

Terms and Conditions: Neither party will be bound by this SOF until it has been signed by and authorized a representative of such party. Acceptance of this SOF shall be subject to any credit approval by H5. Changes or alterations to this SOF will not be accepted after the SOF has been executed by both parties. THERE ARE SIGNIFICANT ADDITIONAL TERMS AND CONDITIONS, WARRANTY DISCLAIMERS AND LIABILITY LIMITATIONS CONTAINED IN THE MSA. DO NOT SIGN THIS SOF BEFORE YOU HAVE READ ALL PROVISIONS OF THE MSA. YOUR SIGNATURE BELOW INDICATES THAT YOU HAVE READ THIS SOF AND THE MSA AND AGREE TO BE BOUND BY THEIR PROVISIONS. This SOF is effective as of the latest date of execution as set forth below.

| H5 Data Centers, LLC | Customer: Limelight Networks |
|---|---|
| By: *David Dunn* ~~David Dunn~~ | By: *Ben Mcklin* ~~Ben Nicklin~~ |
| Name: ~~David Dunn~~ | Name: ~~Ben Nicklin~~ |
| Title: COO | Title: Director of Network StrategyInterconnection |
| Date: 6/6/2022 | Date: 6/6/2022 |

Customer hereby orders and agrees to pay the Data Center Licensor for, and the Data Center Licensor agrees to provide, the following Services:

DocuSign Envelope ID: 765DBF04-9AB8-494E-B5D8-A6877C5F139C

| No. Product Details | Install (NRC) | Qty | Monthly (MRC) | Total MRC |
|---|---|---|---|---|
| 1. **IP Bandwidth** | $ 0.00 | 50 | $ 3.00 | $ 150.00 |
| | | | | -$ 0.00 |

IP Bandwidth from H5 with ability to burst at $5.00/Mbps above committed rate (based on 95th percentile billing methodology)

| | | | | |
|---|---|---|---|---|
| **(NRC) SubTotal** | **$ 0.00** | **(MRC) Sub-Total** | **$ 150.00** |
| **(NRC) Discount** | **$ 0.00** | **(MRC) Discount** | **$ 0.00** |
| **Install (NRC) Total** | **$ 0.00** | **Monthly (MRC) Total** | **$ 150.00** |

| | |
|---|---|
| **Install (NRC)** | **$ 0.00** |
| **First Monthly (MRC)** | **$ 150.00** |

| | |
|---|---|
| **Total Due at Signing:** | **$ 150.00** |

This SOF Includes:
1) 50mbps Internet Bandwidth
2) /29 IP Range

Until such times that parties mutually agree on a new Master Services Agreement, the parties agree that this SOF shall be governed by the Master Services Agreement between H5 Data Centers – Chandler, LLC (as successor-in-interest to NextFort Ventures Chandler, LLC) and Limelight Networks, Inc. dated December 31, 2014.

This SOF shall be added on and co-terminus with SOF 101474

DocuSign Envelope ID: 54A7DEC0-E1C0-495B-817B-02AC86DC83C6

**H5 DATA CENTERS**

**Service Order Form**
SOF Number: 101474

**Customer:**
Limelight Networks

,

**Data Center Licensor:**
H5 Cleveland, LLC and H5 Cleveland #2, LLC
1625 Rockwell Avenue
Cleveland, Ohio 44114

**Customer Address for Notices:**
Name: _____
Address: _____
City, ST Zip: _____
Email: _____

**Data Center Licensor Address for Notices:**
H5 Data Centers
9320 Wilshire Blvd., Suite 300
Beverly Hills, CA 90212
Info@h5datacenters.com

**Customer Address for Billing:**
Name: _____
Address: _____
City, ST Zip: _____
Phone: _____
Email: _____

Account Name: **Limelight Networks**
Contact Name: **Matt Johnson**

SOF Type: **New**
SOF Date: **May 25, 2022**

This Service Order Form (this "**SOF**") is being entered into pursuant to that certain Master Services Agreement (the "**MSA**") between Customer and H5 Data Centers LLC ("**H5**") dated _____,_____. This SOF is governed by and subject to the terms and conditions of the MSA. Capitalized terms not otherwise defined in this SOF will have the meanings given in the MSA. H5 is signing this SOF for and on behalf of Data Center Licensor and is authorized to do so. Data Center Licensor shall bear any and all responsibilities, obligations, or liabilities in connection with this SOF, it being understood that H5 is only signing this SOF in order to bind the Data Center Licensor as a party to this SOF.

**Terms and Conditions:**

SOF Term (months):36, renewing as provided in the MSA.

Commencement Date: Jun 8, 2022

Security Deposit: $ 0.00

Terms and Conditions: Neither party will be bound by this SOF until it has been signed by and authorized a representative of such party. Acceptance of this SOF shall be subject to any credit approval by H5. Changes or alterations to this SOF will not be accepted after the SOF has been executed by both parties. THERE ARE SIGNIFICANT ADDITIONAL TERMS AND CONDITIONS, WARRANTY DISCLAIMERS AND LIABILITY LIMITATIONS CONTAINED IN THE MSA. DO NOT SIGN THIS SOF BEFORE YOU HAVE READ ALL PROVISIONS OF THE MSA. YOUR SIGNATURE BELOW INDICATES THAT YOU HAVE READ THIS SOF AND THE MSA AND AGREE TO BE BOUND BY THEIR PROVISIONS. This SOF is effective as of the latest date of execution as set forth below.

| H5 Data Centers, LLC | Customer: Limelight Networks |
|---|---|
| By: *David Dunn* | By: *Dan Boncel* |
| Name: David Dunn | Name: Dan Boncel |
| Title: COO | Title: CFO |
| Date: 6/6/2022 | Date: 5/26/2022 |

Customer hereby orders and agrees to pay the Data Center Licensor for, and the Data Center Licensor agrees to provide, the following Services:

DocuSign Envelope ID: 54A7DEC0-E1C0-495B-817B-02AC86DC83C6

| No. | Product Details | Install (NRC) | Qty | Monthly (MRC) | Total MRC |
|---|---|---|---|---|---|
| 1. | **Colocation Cabinet** | $ 400.00 | 2 | $ 550.00 | $ 1,100.00 |
| | | | | | -$ 50.00 |
| | Space for one (1) standard IT cabinet | | | | |
| 2. | **PWR-208-30-Pri/Sec** | $ 600.00 | 2 | $ 900.00 | $ 1,800.00 |
| | | | | | -$ 0.00 |
| | 208 Volt 30 Amp UPS and generator backed power circuit, pair not to exceed 80% of breakered capacity | | | | |
| 3. | **Cross Connections** | $ 0.00 | 0 | $ 0.00 | $ 0.00 |
| | | | | | -$ 0.00 |
| | MTM cross connections to 3rd party providers available at time of order | | | | |
| | Fiber - $200 MRC / $200 NRC | | | | |
| | Coaxial - $150 MRC / $150 NRC | | | | |
| | Copper - $100 MRC / $100 NRC | | | | |
| 4. | **Remote Hands Service** | $ 0.00 | 0 | $ 0.00 | $ 0.00 |
| | | | | | -$ 0.00 |
| | A la carte remote hands available at $150/hr during business hours (billable in 15 minute increments) and $225/hr during non-business hours (billable in 15 minute increments with a 1 hour minimum) | | | | |

| | | | | |
|---|---|---|---|---|
| **(NRC) SubTotal** | $ 2,000.00 | | **(MRC) Sub-Total** | $ 2,900.00 |
| **(NRC) Discount** | $ 1,000.00 | | **(MRC) Discount** | $ 50.00 |
| **Install (NRC) Total** | $ 1,000.00 | | **Monthly (MRC) Total** | $ 2,850.00 |

| | |
|---|---|
| **Install (NRC)** | **$ 1,000.00** |
| **First Monthly (MRC)** | **$ 2,850.00** |
| **Total Due at Signing:** | **$ 3,850.00** |

This SOF Includes:
1) Two (2) standard lockable IT cabinets
2) Two (2) primary and redundant 30amp power whips

Until such times that parties mutually agree on a new Master Services Agreement, the parties agree that this SOF shall be governed by the Master Services Agreement between H5 Data Centers – Chandler, LLC (as successor-in-interest to NextFort Ventures Chandler, LLC) and Limelight Networks, Inc. dated December 31, 2014.

*Limelight*



DISCOVER A GREENER INTERNET

## Master Services Agreement

This NextFort Ventures Chandler Master Services Agreement (together with all exhibits hereto, and amendments and addenda executed hereunder, the "**Agreement**") is made between NextFort Ventures Chandler, LLC, a Nevada limited liability company ("**NextFort**") and Limelight Networks, Inc., a Delaware corporation ("**Customer**"), and is effective as of the date set forth below (the "**Effective Date**"). This Agreement describes the terms and conditions under which NextFort will provide all colocation and related services to Customer at the NextFort Chandler Data Center, located at 2600 West Germann Road, Chandler, Arizona 85286 (the "**Data Center**"). NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, NextFort and Customer agree as follows:

**Section 1.  Services.** NextFort shall, directly or through subcontractors or agents, provide Customer with those colocation and related services ("**Services**") identified on one or more service order forms executed by Customer and NextFort hereunder (each, a "**Service Order Form**"), subject to the terms and conditions of this Agreement and such Service Order Form which, upon mutual execution, shall become part of this Agreement. NextFort will provision the Services identified on any mutually-executed Service Order Form following credit approval, receipt of any security deposit as set forth in Section 4 below, and payment of all other amounts due under this Agreement and each such Service Order Form. NextFort will perform the Services in accordance with the service level agreements attached hereto as Exhibit A or, alternatively, any service level agreement attached and applicable to any Service Order Form (the "**SLA**"). A description of services and additional terms and conditions related to any remote hands services ordered by Customer are contained in Exhibit B.

**Section 2.  Agreement and Service Order Form Term.** The term of this Agreement shall commence on the Effective Date and shall continue until terminated pursuant to Section 12 below. Unless otherwise specified in any Service Order Form, the term of any Service Order Form (the "**SOF Term**") shall commence on the date on which Customer is notified in writing, including by email, that the Services under such Service Order Form are ready for Customer's use (the "**Service Ready Date**") and shall continue for the SOF Term set forth on such Service Order Form, renewing as provided in the following sentence unless earlier terminated pursuant to Section 12 below. Unless either party notifies the other in writing not less than thirty (30) days prior to the expiration of the original or any renewed SOF Term that it intends to not renew any Service Order Form, the Service Order Form will automatically renew for successive one (1) month periods pursuant to the same terms and conditions, unless otherwise expressly specified in any Service Order Form, provided however, that if the Service Order Form involves third party services obtained by NextFort on behalf of and at the request of Customer, the Service Order Form will automatically renew for the period of time then remaining on any contractual obligation to such third party. Where multiple Service Order Forms are in existence, each Service Order Form has a SOF Term.

## Section 3.  Invoicing and Payment

**3.1      Initial Charges.** One time installation, set-up or non-recurring fees, the first month's monthly service charges, and any security deposit required by NextFort, all as set forth on the Service Order Form(s), are due and payable upon execution of the Service Order Form by Customer.

**3.2      Monthly Service Charges.** Monthly service charges are billed in advance of the month in which Customer will receive Services, provided, however, that any usage and/or consumption-based charges, including but not limited to payments for usage-based metered power or burstable bandwidth services, are invoiced in arrears. Except as set forth in Section 3.1, payment with respect to NextFort invoices for non-usage and/or consumption-based charges is due and payable within forty-five (45) days of the invoice date, without any right of set off. Payment with respect to usage and/or consumption-based charges is due and payable within forty-five (45) days of the invoice date. After providing five (5) business days' written notice, if all service and

v 10.23.14

other charges then due (other than those charges disputed in accordance with Section 3.3 below) are not paid in full: (i) Customer shall pay interest on the past due amounts in the amount of one and one-half percent (1.5%) per month (or, if less, the maximum interest rate permitted by applicable law); (ii) Customer shall pay all costs of collection, including reasonable attorneys' fees, court costs and collection agency fees; (iii) NextFort may suspend any and all Services (including access to the data center or Customer's space in the data center) and require a fee to restart Services; and (iv) NextFort may exercise all other remedies available to it under this Agreement and applicable law.

**3.3      Billing Disputes.** Customer may withhold any disputed portion of an invoice provided that Customer submit to NextFort, within forty-five (45) calendar days of the invoice date, a written statement providing adequate evidence of the billing error. NextFort will determine in good faith if there is an invoice error and will issue a credit to Customer if it confirms the error.

**3.4      Taxes and Fees.** Service charges are exclusive of applicable sales, use, and transaction privilege taxes, and taxes charged by a governmental entity against NextFort or Customer based on any determination that NextFort is providing, or has in the past provided a lease or license of real estate to Customer, which, if applicable, shall be paid by Customer (excluding taxes based on NextFort's income) upon demand and no later than forty-five (45) days after invoicing by NextFort. Customer shall be liable for and shall pay at least ten (10) days before delinquency (and Customer shall indemnify, defend and hold NextFort harmless for, from and against any claims arising out of, in connection with, or in any manner related to, all governmental fees, taxes, tariffs and other charges levied directly or indirectly against any personal property, fixtures, machinery, equipment, apparatus, systems, connections, interconnections and appurtenances located in or used by Customer or its clients in or in connection with the Services.  If any such taxes for which Customer or its clients are liable are levied or assessed against NextFort or NextFort's property, and if NextFort elects to pay the same, Customer reimburse such amounts to NextFort, within ten (10) days of NextFort's demand therefor. Customer agrees that notwithstanding anything to the contrary in this Agreement, NextFort may identify Customer and its clients by name and address as an individual or entity having assets at the Data Center to any governmental authority having jurisdiction over the collection of property taxes relating to equipment installed in Customer's colocation space or lease-taxes based on the colocation Services.

**3.5      Modification of Services/Pricing.**  In the event that, during the term of this Agreement or any SOF Term, there is a utility rate plan increase, NextFort shall have the right, effective immediately upon written notice, to increase Customer's price for power Services, but only to such an extent to reasonably cover the additional cost to NextFort resulting from such utility rate plan increase. In addition, in the event that, during the term of this Agreement or any SOF Term, any regulatory requirement, tax, or similar cost beyond the control of NextFort increases the cost of Services, NextFort shall provide Customer with notice of such price increase and Customer shall, within forty-five (45) days after receipt of such notice, have the right to terminate the affected Service without payment of early termination charges. Upon notice to Customer, NextFort may modify or suspend Customer's Services as necessary to comply with any law or regulation as reasonably determined by NextFort. In the event that it becomes necessary to relocate Customer's equipment to another customer area within the Data Center, Customer agrees to cooperate

in good faith with NextFort to facilitate such relocation and NextFort agrees to be responsible for any costs and expenses incurred by NextFort in connection with any such relocation. NextFort will use commercially reasonable efforts to minimize and avoid any interruption to Customer's Services in the event of such a relocation.

**Section 4. Credit Approval and Security Deposits.** Customer agrees to provide NextFort with credit information as requested, and delivery of Service is subject to credit approval. Customer's execution of this Agreement authorizes NextFort's continuing credit review and approval. NextFort reserves the right to immediately terminate this Agreement and any Service Order Forms in the event Customer's credit is not approved to secure payments thereunder.

**Section 5. Customer Obligations**

**5.1    Customer's Representations and Warranties.** Customer represents and warrants that: (i) it is a corporation or other business entity authorized to do business pursuant to applicable law or an individual 18 years or older with full right and authority to enter into, execute, and perform its obligations under this Agreement and that no pending or threatened claim or litigation known to it would have a material adverse impact on its ability to perform as required by this Agreement.

**5.2    Customer Obligations.** Customer agrees that: (i) it will not sublease, sublicense, sell, resell, or offer for resale, any space in a rack, cabinet or cage or the Services in any manner, except as provided in *Section 7* below; (ii) it will comply with all applicable laws, regulations and codes and will not use the Services in any manner which is in violation of any law, code, governmental regulation; (iii) all equipment, materials, cabling or other items placed or deployed by Customer or its clients will be installed and used in compliance with all applicable laws, regulations and manufacturer specifications; (iv) Customer will not permit any mechanic's, material men's or other liens to be filed against all or any part of the Data Center, its equipment or its facilities, for any labor or material furnished to Customer or its clients in connection with work of any kind performed at the Data Center or at the direction of Customer or its clients; (v) Customer's Data (as defined below) will not violate or infringe the rights of others, including, without limitation, any patent, copyright, trademark, trade dress, trade secret, privacy, publicity, or other personal or proprietary right, or constitute a defamation or libel of NextFort or any third party; and (vi) Customer's Data will not violate any laws to which Customer or NextFort may be subject or constitute a defamation or libel of NextFort or any third party and will not result in the obligation of NextFort to make payment of any third party licensing fees. "**Customer's Data**" means the text, data, images, videos, sounds, photographs, illustrations, graphics, programs, code and other materials transmitted or stored by Customer, Customer's clients and/or persons under Customer's control through any Service provided hereunder. Notwithstanding the forgoing, it shall not be a breach of this Agreement if any non-compliance with the customer obligations set forth in subsection (ii), (iii), (v), and (vi) of this Section 5.2 does not materially and adversely affect NextFort and/or its customers.

**5.3    Colocation Services.** Colocation Services consist of (i) NextFort granting Customer a nonexclusive right to install, operate and maintain Customer's equipment in a space within the Data Center designated by NextFort for Customer's use, as more particularly described on a Service Order Form, and (ii) the provision of power to such colocation space, as more particularly described on a Service Order Form and, in the case of usage-based metered power services, the applicable Metered Power Addendum executed by the Customer. Customer acknowledges that the Data Center is a shared space and that such shared space, other than Customer's designated colocation cabinets, is not secure from others with access to the Data Center. Customer will use Customer's colocation space in a manner that will not disturb or interfere with the occupancy or use of any portion of the Data Center other than Customer's racks by other customers present in the Data Center. Customer will not use any colocation space or the Data Center as a business

location or work site by, among other things, housing personnel or receiving mail there. Customer is responsible to ensure that the total of the manufacturers rated amperage for all equipment on any given electrical circuit does not exceed the amperage size of that circuit, and that the total running amperage per circuit as measured by NextFort, does not exceed 80% of the amperage size for that circuit. Customer shall connect its equipment to any redundant power circuit Services ordered by Customer in a redundant manner and Customer's electrical consumption for any pair of redundant power circuits as determined by metering devices installed by NextFort or other means chosen by NextFort, shall at no time collectively exceed the capacity of one of such circuits in the redundant pair. If Customer violates this obligation, Customer shall not have any right to make any claim against NextFort for any credits under the Service Level Agreements. Further, upon five (5) days written notice, NextFort may, in addition to all other remedies herein, invoice Customer for secondary circuits as primary circuits for the remainder of the SOF Term for the Services at issue. Unless Customer is in default of this Agreement, NextFort will provide Customer with 24 x 7 key card access to the Data Center. Key cards will be issued in accordance with NextFort's policies and procedures in effect from time to time, at Customer's cost.

**5.4    Compliance with NextFort Policies.** Customer agrees to comply at all times with NextFort's policies and procedures, including but not limited to its Acceptable Use Policy, its Data Center Facility Rules and Regulations, and other security procedures in place from time to time as available at www.NextFort.com. Customer shall be liable for any loss or damage to NextFort's equipment, the Data Center, or other parties' equipment due to its failure to follow such policies and procedures. In the event of Customer's failure to comply with such policies, NextFort may suspend Customer's access to the Service, in addition to such other remedies as NextFort may have at law or pursuant to this Agreement, and all Service Level Agreements shall be invalidated and Customer shall not be entitled to any credits that would otherwise be provided thereunder. Neither this Agreement nor any NextFort policy requires that NextFort take any action against Customer or any other customer for violating the Acceptable User Policy, the Data Center Facility Rules and Regulations or any other policy, but NextFort is free to take any such action it sees fit.

**5.5    Customer's Equipment and Data.** Customer, at its own cost and expense, shall protect and maintain its colocation space and the equipment placed in the Data Center pursuant to the Services, including its equipment and the equipment of its clients, and shall ensure that neither Customer nor its employees, agents, contractors or invitees damage any part of the Data Center, Customer's colocation space or any equipment located in or about the Data Center. Customer shall ensure at all times that empty rack units are covered by blanking panels, and if Customer does not comply with this policy, in addition to all other remedies, NextFort may, at Customer's expense (labor and materials) with or without notice, install such blanking panels. Furthermore, Customer's violation of this provision shall invalidate all Service Level Agreements. Customer agrees that NextFort is not responsible for the installation, performance, compatibility, maintenance, or monitoring of equipment placed by Customer or its clients in the Data Center. Customer shall not allow any debris or supplies to be left in Customer's colocation space or any common space in the Data Center at any time. Customer agrees to reimburse NextFort for any costs incurred for the removal of such items. Customer shall not maintain or permit any nuisances or violations of governmental laws, rules, regulations or ordinances with respect to the Data Center and shall ensure that its employees, agents or invitees shall not permit any explosive, flammable or combustible material or any hazardous or toxic materials, as defined under state, federal or local laws or regulations, to be located in or about the Data Center. Customer is solely responsible for Customer's Data and the data that passes to Customer over the Internet via the Services, and Customer agrees that NextFort has no control over and no responsibility for all such data, whether it passes through NextFort's network or not. NextFort shall have no liability to Customer for any breach of network security by any third party action and/or any resulting transfer of Customer's Data.

v 10.23.14                                                                                          2

**5.6      Bandwidth Services.**  The specific bandwidth and, therefore, the speed or rate at which Customer may transmit and receive data via its Internet connection, is specified in the applicable Service Order Form or Forms. Customer acknowledges that incremental usage in excess of the bandwidth purchased is subject to available bandwidth on NextFort's network. If specified in the applicable Service Order Form or Forms, NextFort will, on Customer's behalf and expense, use commercially reasonable efforts secure IP address space for Customer.  Unless otherwise agreed to in writing, IP addresses assigned to Customer by NextFort (including usernames and email addresses) will remain the property of NextFort or its provider, which NextFort or its provider may alter, reclaim or replace at any time, as it deems necessary. Customer agrees to provide to NextFort information as requested, regarding usage of IP address space assigned to Customer by NextFort.  Estimated dates of completion are often dependent on parties other than NextFort, including Local Exchange Carriers, therefore, such dates are provided on a "reasonable efforts" basis, but NextFort makes no guarantees regarding such dates.  You agree and understand that the bandwidth services do not include any digital subscriber line service.  This Agreement does not include or contemplate the provision of local telephone access.  Customer agrees to pay all burstable bandwidth service fees based upon Customer's actual usage using the 95th percentile method.

**NextFort or its third party providers may interrupt bandwidth service during non-peak periods, as determined by NextFort or its third party providers, to perform routine preventive maintenance. NextFort will use its best efforts to inform Customer before interrupting service to insure that access loss is minimized.  Bandwidth services are backed by the Service Level Agreements. In the event of any interruption, outage, packet loss, or similar issue affecting bandwidth services, then Customer's sole and exclusive remedy for such failure will be any credits provided for in the applicable Service Level Agreement.**

**Section 6.  NextFort Equipment and Intellectual Property.**  Title to all equipment and goods provided to Customer for Customer's use by NextFort in connection with provision of the Services shall remain with NextFort at all times and shall not be used by Customer for any purpose other than as intended in connection with provision of the Services. Customer shall not, and shall not permit others to tamper with, remove, alter, connect to, or disconnect, any NextFort equipment. To the extent that at any time during the term of this Agreement, NextFort provides access, through the Internet, to NextFort's computer software on NextFort servers, for the purposes of monitoring and/or otherwise managing the Services ("**NextFort Software**"), Customer acknowledges and agrees that such access is provided to Customer only for its internal business purposes related to the Services, and that NextFort retains all right, title, and interest in and to the NextFort Software, and this Agreement does not grant Customer any intellectual property rights in or to the NextFort Software or any of its components. Without limiting the foregoing, Customer will not: (i) modify, create derivative works from, distribute, publicly display or perform, or sublicense the NextFort Software; (ii) use the NextFort Software in any way to allow third parties to use or exploit the NextFort Software; or (iii) reverse engineer, decompile, disassemble, or otherwise attempt to derive any of the NextFort Software's source code. NextFort shall retain all right, title and interest in any intellectual property right provided to Customer in connection with the Services, including all trademarks, trade names, service marks, copyrights, software, documentation, inventions, designs, concepts or other intellectual property rights.

**Section 7.  Resale of Colocation Services.**  Notwithstanding Section 5.2 above, Customer may resell colocation Services to one or more clients of Customer during the term of such Services in accordance with the provisions of this Section 7 and upon written notice to NextFort. Customer agrees and acknowledges that it shall be fully liable to NextFort for its use and the use by each client of Customer of the Services and Customer's colocation space at the Data Center.  In this regard, Customer agrees that actions of each of its clients shall be deemed to be actions by Customer, and that the term

"Services" as used in the Agreement includes the resold Services. Customer will provide any necessary training with regard to the requirements of this Agreement to those whom it allows to enter the Data Center. Customer shall, upon written request by NextFort, provide the identities of all clients of Customer with equipment colocated in Customer's colocation space. Nothing in this Section 7 alters the way that NextFort charges Customer for Services or alters Customer's obligations to pay for the Services as set forth in the Agreement and all Service Order Forms.  NextFort will not bill any client of Customer directly for Services and Customer is solely responsible to pay for all of the Services, whether or not Customer receives any payment from its client(s) for the resold Services.  No client of Customer shall have any right to receive any Services directly from NextFort, nor shall any client of Customer have any right to make any claim against NextFort for any credits under the Service Level Agreements. Customer's permission to resell Services under this Section 7 is conditioned upon Customer receiving the written agreement of each client purchasing resold Services to abide by all restrictions placed upon Customer, and obligations undertaken by Customer, in this Agreement and any applicable Service Order Form, and each client of Customer complying with all such restrictions and obligations.  No client of Customer shall have the right to sublease, sublicense, sell, resell, or offer for resale, any space in a rack, cabinet or cage or the Services or the in any manner without the written consent of NextFort.

**Section 8.  Disclaimer of Warranties**

**8.1      Agreement on Risk Allocation.**  Customer acknowledges and agrees that NextFort has set its prices and entered into this Agreement in reliance on the warranties, limitations and disclaimers set forth herein which reflect an allocation of risk between the parties and forms an essential basis of the bargain between the parties.

**8.2      DISCLAIMER OF WARRANTIES.** CUSTOMER'S SERVICES ARE PROVIDED ON AN "AS IS" AND "AS AVAILABLE" BASIS AND NEXTFORT EXCLUDES AND CUSTOMER HEREBY WAIVES ALL REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED, ARISING BY OPERATION OF LAW OR OTHERWISE, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NONINFRINGEMENT, AND TITLE, AS WELL AS ANY WARRANTIES ARISING FROM A COURSE OF DEALING, USAGE OR TRADE PRACTICE. NEXTFORT DOES NOT WARRANT OR GUARANTY THAT THE SERVICES WILL WITHOUT FAULT, ERROR OR INTERRUPTION AND CUSTOMER'S SOLE REMEDY FOR SERVICES NOT IN CONFORMANCE WITH THE SLAs SHALL BE THE SERVICE CREDITS SET FORTH THEREIN. CUSTOMER ACKNOWLEDGES THAT THE DATA CENTER IS A SHARED SPACE AND CUSTOMER ACCEPTS THAT SUCH SHARED SPACE IS NOT SECURE FROM OTHERS WITH ACCESS TO THE DATA CENTER.

**Section 9.  LIMITATION OF LIABILITY**

IN NO EVENT WILL NEXTFORT OR ITS AFFILIATES, OR EITHER OF THEIR OFFICERS, DIRECTORS, MEMBERS, EMPLOYEES, AGENTS, SUBCONTRACTORS, REPRESENTATIVES, MANAGERS, LANDLORDS AND/OR MORTGAGEES BE LIABLE TO CUSTOMER OR ANY AFFILIATE OR CLIENT OF CUSTOMER, AND CUSTOMER HEREBY WAIVES ANY CLAIMS AGAINST NEXTFORT FOR DAMAGES, DIRECT OR INDIRECT, ARISING OUT OF THE SERVICES PROVIDED HEREUNDER, THE SERVICES PROVIDED BY A THIRD PARTY SERVICE PROVIDER CONTRACTED FOR DIRECTLY OR INDIRECTLY BY CUSTOMER RELATING TO THE SPACE OR THE DATA CENTER OR CUSTOMER'S SERVICES CUSTOMER'S DATA, OR CUSTOMER'S USE OF CUSTOMER'S SPACE AND THE DATA CENTER, INCLUDING BUT NOT LIMITED TO DAMAGES RELATING TO SERVICE INTERRUPTIONS, DELAYS, TORTIOUS CONDUCT, ERRORS, DEFECTS, THE FAILURE TO FURNISH SERVICE, SOFTWARE DEFECTS, AND EQUIPMENT DEFECTS OR

v 10.23.14

MALFUNCTIONS. PROVIDED HOWEVER, THAT NEXTFORT SHALL EXTEND SUCH CREDIT ALLOWANCES TO CUSTOMER AS DUE UNDER ANY APPLICABLE SLA.

NEITHER PARTY SHALL BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES (INCLUDING BUT NOT LIMITED TO DAMAGES FOR LOST PROFITS OR LOST REVENUES), WHETHER CAUSED BY THE ACTS OR OMISSIONS OF A PARTY'S EMPLOYEES OR REPRESENTATIVES, NEGLIGENCE, OR WILLFUL MISCONDUCT, AND REGARDLESS OF WHETHER SUCH PARTY HAS BEEN INFORMED OF THE LIKELIHOOD OF SUCH DAMAGES.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS AGREEMENT OR ANY SERVICE ORDER FORM, NEXTFORT'S MAXIMUM AGGREGATE LIABILITY TO CUSTOMER FOR ANY DAMAGES, LOSSES AND CAUSES OF ACTIONS WHETHER IN CONTRACT OR TORT (INCLUDING NEGLIGENCE OR OTHERWISE) ARISING OUT OF, RELATED TO OR IN CONNECTION WITH THIS AGREEMENT OR THE SERVICES WILL BE LIMITED TO THE TOTAL AMOUNT OF MONTHLY RECURRING CHARGES PAID BY CUSTOMER TO NEXTFORT FOR THE TWELVE (12) MONTH PERIOD PRIOR TO THE EVENT OR EVENTS GIVING RISE TO SUCH LIABILITY.

**Section 10. Indemnification by Customer.** Customer will indemnify, defend, and hold the Indemnified Parties harmless against any Indemnified Claim, provided NextFort gives Customer prompt notice of such Indemnified Claim. Customer's obligations set forth in the preceding sentence include, without limitation, retention and payment of attorneys and payment of court costs, as well as settlement at Customer's expense, payment of judgments, or both. The "Indemnified Parties" are NextFort and its managers, officers, directors, shareholders, parents, subsidiaries, agents, insurers, successors, and assigns. An "Indemnified Claim" is any third party claim (including but not limited to claims by Customer's clients), suit, or proceeding against the Indemnified Parties arising out of, related to, Customer's gross negligence or the gross negligence of its clients, Customer's breach of this Agreement, or the use of the Services by Customer or its clients.

**Section 11. Insurance.** Both parties shall maintain Commercial General Liability insurance in an amount not less than TWO MILLION ($2,000,000) DOLLARS per occurrence/THREE MILLION ($3,000,000) DOLLARS aggregate which policy shall insure the hazards of the Data Center and the parties' respective operations and the operations of their respective independent contractors thereon and contractual liability (including covering any indemnity obligation contained in this Agreement). Customer shall maintain standard form all-risk property insurance in an amount equal to the replacement cost of all equipment and other property and trade fixtures owned by Customer or a client of Customer, for which Customer is legally liable, or that was installed by Customer, on Customer's behalf, or by a client of Customer or on that client's behalf, and which is located in the Data Center. The parties shall furnish each other with a Certificate of Insurance evidencing such coverages with Customer's naming NextFort as an additional insured. Such insurance shall be primary and non-contributory with any insurance carried by the other party. Further, if required by law, Customer shall also maintain Worker's Compensation insurance an amount not less than the statutory requirements in the State of Arizona. Customer will be solely responsible for ensuring that its agents (including consultants, contractors and subcontractors) maintain separate insurance at levels no less than those required herein above. The parties shall maintain insurance described in this paragraph throughout the term of this Agreement and during any period during which any claims arising from or out of this Agreement are or may be outstanding.

**Section 12. Termination**

**12.1      Termination for Cause; Suspension.** NextFort may suspend any and all services and/or terminate this Agreement and any Service Order Forms

v 10.23.14

hereunder for cause in the event of Customer's failure to pay amounts when due after ten (10) business days notice and failure to cure, or upon Customer's insolvency, filing for bankruptcy or reorganization, failure to discharge an involuntary petition for bankruptcy within sixty (60) days after filing, or general assignment for the benefit of creditors. Either party may terminate this Agreement and Service Order Form(s) hereunder for cause in the event of material breach by the other party after thirty (30) days notice and failure to cure. Notwithstanding the foregoing and without waiving any other right or remedy that NextFort may have under this Agreement, in the event of a material breach by Customer that, in NextFort's reasonable determination, is causing interference or damage to NextFort's Data Center or property, NextFort may suspend services immediately and terminate this Agreement if the default is not cured by Customer within twenty four (24) hours of notice.

**12.2      Termination for Convenience.** Either party may terminate this Agreement for any reason or no reason upon thirty (30) days notice provided that all Services have been provided and payments made pursuant to all Service Order Forms and no Service Order Forms are in effect. Customer may terminate any Service Order Form for convenience upon thirty (30) days notice, provided however, that on the effective date of such termination for convenience of a Service Order Form, Customer will pay NextFort all amounts then due under such Service Order Form plus the early termination charges provided in Section 12.3, unless expressly provided otherwise in the Service Order Form being terminated. NextFort may terminate this Agreement upon reasonable notice to Customer without constituting a breach upon any regulatory decision or governmental order requiring NextFort to suspend Service(s).

**12.3      Early Termination Charges.** If Customer terminates any Service prior to the end of any initial or renewal SOF Term, or NextFort terminates this Agreement for cause pursuant to Section 12.1, except to the extent expressly provided in any Service Order Form, Customer agrees to pay NextFort a termination charge for each open Service Order Form equal to 100% of Customer's monthly recurring charges for such Service Order Form multiplied by the number of months remaining in the SOF Term. The parties specifically agree that the damages which NextFort would incur arising from any breach or early termination of this Agreement or any Service Order Form by Customer are based upon future facts and conditions which are difficult for the parties to presently predict, anticipate, ascertain or calculate. The parties further agree that such liquidated damages, as determined herein, are based upon the best efforts of the parties to estimate the nature and amount of NextFort's actual damages and are not penal in nature.

**12.4      Effects of Termination.** Upon termination of this Agreement (at which time all Service Order Forms hereunder shall automatically terminate), or upon termination of any Service Order Form hereunder, any and all payment obligations of Customer under this Agreement and all terminated Service Order Forms shall become immediately due and payable, and NextFort shall discontinue providing the related Services. Customer shall, at its expense, remove its equipment and will restore Customer's colocation space to the condition existing at the commencement of the terminated Services and any equipment or property not removed within thirty (30) days will be removed and disposed of by NextFort at Customer's expense, including costs incurred to repair or restore Customer's colocation space. Under no circumstances will NextFort be liable for any loss or damage to Customer's equipment or other property resulting from such removal and disposal. Customer agrees that in the event that Customer fails to pay any amounts owed to NextFort under this Agreement or any Service Order Form, in addition to any remedy available to it under this Agreement or applicable law, NextFort may, without liability but upon notice, take possession of any Customer equipment and store it, at Customer's expense until taken as full or partial satisfaction of any judgment or lien, or liquidate such equipment in a commercially reasonable manner and apply the proceeds of such liquidation to any and all amounts due under this Agreement. The following provisions will survive termination of this Agreement or any Service Order Form: (i) any obligation of the Customer to pay for Services; (ii) Sections 3, 6, and 8 through 13 of this Agreement; and (iii) any other provision

4

of this Agreement or any Service Order Form that must survive termination to fulfill its essential purpose.

## Section 13. Miscellaneous

**13.1     Force Majeure** Except with respect to accrued payment obligations, neither party shall be liable for any failure of performance due to causes beyond such party's reasonable control, including, but not limited to acts of God, fire, flood or other catastrophes; any law, order, regulation, or governmental action, national emergencies, insurrections, riots, acts of terrorism or wars, unavailability of rights-of-way; or strikes; provided however, the affected party shall use commercially reasonable efforts to eliminate such event.

**13.2     Confidential Information; Marketing** The parties acknowledge that they will have access to certain confidential information of the other concerning business, plans, customers, technology, and products ("**Confidential Information**"). Each party agrees that it will not use in any way, for its own account or the account of any third party, nor disclose to any third party, any of the other's Confidential Information and will take reasonable precautions to protect the confidentiality of such information. The provisions of this Section 13.2 shall not apply, however, to any information that: (i) is already in the public domain or becomes available to the public through no breach of this Agreement by the receiving party; (ii) was lawfully in the receiving party's possession prior to receipt from the disclosing party; (iii) is received independently from a third party free to lawfully disclose such information to the receiving party; (iv) is subsequently independently developed by the receiving party; (v) is required to be disclosed in order to not commit a violation of law, provided that the disclosing party must promptly notify the other party in writing prior to such disclosure; (vi) is disclosed pursuant to Section 3.4 hereto.

**13.3     No Lease; Lease Taxes** This Agreement is for Service(s) only and is neither intended to nor does it constitute a lease, sublease, assignment, easement or other agreement relating to real property and gives Customer no right of title or ownership in NextFort's real or personal property. Customer acknowledges and agrees that (i) it has been granted only a non-exclusive revocable license as set forth above, and (ii) it has no rights as a tenant or otherwise under any real property or landlord/tenant theory, laws, regulations, or ordinances Notwithstanding the foregoing, in the event that any local, county or state governmental taxing authorities charge any lease-based taxes with respect to Customer's presence in the Data Center, Customer agrees to pay such taxes upon invoice by NextFort or such authority.

**13.4     Assignment or Transfer** Neither party may transfer or assign this Agreement, or any of its rights or obligations hereunder without the other's prior written consent, which will not be unreasonably withheld, except that a party (the "Transferring Party") may, without the prior approval of the other party but with written notice, make such assignment, delegation, transfer or sale, by operation of law or otherwise, to (a) any person or entity to which the Transferring Party has assigned, sold, leased, transferred or otherwise disposed of all or substantially all of its assets, (b) any successor corporation resulting from any merger or consolidation of the Transferring Party with or into another corporation or (c) any subsidiary or corporation that directly or indirectly controls or is controlled by or is under common control of the Transferring Party provided the Transferring Party shall remain jointly and severally liable for performance of all its duties hereunder

**13.5     Notice** Notice shall be in writing to the address set forth below and properly given  (i) immediately, if delivered in person, via facsimile, or electronic mail, (ii) after one (1) day, if sent by overnight courier; or (iii) after three (3) days, when sent by first class U.S. Mail.

**13.6     Single Point of Contact** Customer's initial designated Single Point(s) of Contact, as further explained in the NextFort Data Center Facility Rules and Regulations, is as set forth on the Single Point of Contact Form(s), as attached to this Agreement as Exhibit C and executed in connection with the execution by Customer of this Agreement

**13.7     Amendments** Any amendments to this Agreement or any Service Order Form must be in writing and executed by both parties

**13.8     Relationship of Parties** The parties are independent contractors and this Agreement does not establish any partnership, joint venture, employment, franchise or agency relationship between them

**13.9     Severability** Should any provision of this Agreement be held to be void, invalid, or inoperative, the remaining provisions of this Agreement shall not be affected and shall continue in effect and the invalid provision shall be deemed modified to the least degree necessary to remedy such invalidity and maintain the parties' original intent

**13.10     No Waiver; All Rights Cumulative** Failure to enforce any provision of this Agreement shall not be construed as a waiver. The parties' rights shall be deemed cumulative, such that the exercise of one shall not preclude the exercise of others

**13.11     Third Party Beneficiaries** The parties do not intend any provision of this Agreement to be enforceable by or to benefit any third party

**13.12     Headings** The titles and headings of the sections and subsections in this Agreement are intended solely for convenience of reference and are not intended for any other purpose whatsoever, or to explain, modify or place any construction upon or on any of this Agreement's provisions

**13.13     Governing Law, Jurisdiction and Attorneys' Fees** This Agreement shall be governed by the laws of the State of Arizona applicable to contracts to be fully performed therein. The jurisdiction and venue for actions related to this Agreement shall be the State and Federal Courts located in Maricopa County, Arizona. The prevailing party in any action or proceeding in court or in a mutually agreed upon arbitration proceeding arising out of or related to this Agreement shall be entitled to receive its reasonable attorneys' fees and related costs from the other party

**13.14     Entire Agreement; Conflicts** This Agreement and any other related documents executed hereunder, constitute the parties' entire understanding and supersede any oral representations, understandings and offers related to the subject matter hereof. The terms contained in any Service Order Form are incorporated into this Agreement. To the extent that the terms of any Service Order Form are inconsistent with the terms of this Agreement, this Agreement will control.

**13.15     Counterparts** This Agreement may be executed in counterparts, including facsimile transmissions and/or electronic signatures, each of which shall be deemed an original against any party whose signature appears on such counterpart and all of which together shall constitute one and the same Agreement

IN WITNESS WHEREOF the parties have executed this Agreement by their duly authorized representatives effective as of December 20 2014

NextFort Ventures Chandler, LLC
by NextFort Ventures, LLC, Manager

By
Mark E. Towfiq
Manager, NextFort Ventures, LLC
16511 Scientific Way
Irvine, California 92618
10.23.14

CUSTOMER: Limelight Networks, Inc
222 South Mill Avenue, Suite 800
Tempe, Arizona 85281

By
Name.     Robert A Lento
Title      cEO

5

**Exhibit A to Master Services Agreement**
**Dated December 1 , 2014**
**Service Level Agreements**

**Interruption of Services for Non-Bandwidth Services:**

If there is an Interruption of Service, as defined herein, upon notice to NextFort as provided herein, Customer as its exclusive remedy shall be entitled to a credit equal to the portion of Customer's monthly recurring charges as set forth herein. An "**Interruption of Services**" shall occur if (a) there is a violation of the Service Levels for Non-Bandwidth Services set forth in the following paragraph in Customer's colocation space, (b) such violation of service levels is not caused in whole or in part by any act or omission of Customer or its clients or Customer's or its clients' employees, agents, invitees or contractors, nor occurring because of a force majeure event as defined in the Agreement, (c) there is not at that time a breach by Customer or a default by Customer for which NextFort has provided notice of default that, with the passage of time or notice or both would, unless cured or waived, become a breach; (d) in the case of a Customer ordering usage-based metered power services, Customer's In-Suite Electrical Consumption (as defined in Customer's Metered Power Addendum) has not, at any point within the twenty-four hour period preceding the start of the interruption(s) or violation of service levels, exceeded (i) the contracted total Critical IT Power Capacity in KW, as set forth in the Customer's Service Order Form(s), or (ii) for any single suite, any Per Suite Maximum Power Capacity KW set forth in Customer's Service Order Form(s) for the suite in which any interruption or violation of service levels has occurred; and (e) Customer cannot and does not use the Services in the ordinary course of Customer's business, as reasonably determined by Customer because of such violation of service levels. Interruptions of Services at the same time related to the same root cause are deemed to be the same Interruption of Services.

**Service Levels for Non-Bandwidth Services:**

Subject to the limitations contained in this Service Level Agreement and the Agreement, the following constitute the "Service Levels for Non-Bandwidth Services":

| | |
|---|---|
| Power Availability | In the event of a redundant installation of power only (as specified in the applicable Service Order Form) NextFort will provide the contracted power to Customer's colocation space 100% of the time based on Customer having properly deployed dual corded devices fed by redundant and balanced power circuits supplied by NextFort |
| Target In-Suite Temperature | As measured at the cold aisle air supply temperature sensor using a running 15-minute average, in-suite temperature for the suite in which Customer's colocation space is located is targeted to be no higher than eighty-two (82) degrees Fahrenheit, provided that in the event of a switch to generator power, 15-minute average readings that exceed the Target In-Suite Temperature shall be disregarded for such period of time as is reasonably required by the HVAC systems to normalize temperature following the event. |
| Target In-Suite Relative Humidity | As measured at the cold aisle air supply relative humidity sensor using a running 15-minute average, in-suite relative humidity for the suite in which Customer's colocation space is located is targeted to be from 40% to 60% relative humidity, provided that in the event of a switch to generator power, 15-minute average readings that exceed the Target In-Suite Relative Humidity shall be disregarded for such period of time as is reasonably required by the humidity control system to normalize following the event |
| Cross-Connects | In the event of a redundant installation of cross-connects only (as specified in the applicable Service Order Form) NextFort will provide an operational connection from the Customer's Cable Termination Point in Customer's colocation space to the carrier's demarcation point in the Meet-Me-Room 100% of the time |

**Service Credits:**

One (1) day's worth of the monthly recurring charge associated with the affected service shall be credited for each one (1) hour period (or part thereof) during which an Interruption of Services (as defined above) has occurred and is continuing, up to a maximum of three (3) days' credit for each twenty-four (24) hour period of such interruption, with total monthly recurring charge credit related to all instances of Interruption of Services for any month not to exceed that month's total monthly recurring charge payable for the affected Service. Credits shall not apply for any periods during which Customer received any Service free of charge.

For example

(a)    If such Interruption of Services continues for one (1) minute or more up to and including sixty (60) consecutive minutes, one (1) day's worth of monthly recurring charge for the affected Services shall be credited

(b)    if such Interruption of Services continues for a consecutive period of sixty one (61) minutes or more up to and including one hundred twenty (120) consecutive minutes, one (1) additional day's worth of monthly recurring charge for the affected Services shall be credited, for a total credit of two (2) days' worth of monthly recurring charge for the affected Services;

(c)    if such Interruption of Services continues for a consecutive period of more than one hundred twenty (120) minutes, another additional day's worth of monthly recurring charge for the affected Services shall be credited for a total of three (3) days' worth of monthly recurring charge for the affected Services; and

(d)    if such Interruption of Services continues for a consecutive period of twenty-four (24) hours and one minute (and for each period of twenty-four (24) hours thereafter during which such Interruption of Services continues – whether such Interruption of Services is continuous, or whether there are brief periods of service followed by further interruptions related to the same initial root cause, e.g., a specific PDU or HVAC unit has become inoperable, all such further related Interruptions of Services are deemed to be and are herein called the "**Same Interruption**"), one (1) additional day's worth of monthly recurring charges for the affected Services shall be credited for each of the first (1st) three (3) hours of each successive twenty-four (24) hour period of the Same Interruption. In other words, the maximum credit of monthly recurring charges for any affected Service for any twenty-four (24) hour period during which an Interruption of Services occurs, regardless of the number or length of Interruption of Services resulting from the Same Interruption in such twenty-four (24) hour period, shall not exceed three (3) days' worth of monthly recurring charge for the affected Services.

**Service Levels and Service Level Credits for Bandwidth Services**

NextFort shall pass through to Customer the benefit it actually receives from its third party bandwidth providers related to service credits for service interruptions, failures and/or outages that impact the bandwidth services ordered by Customer. Credits shall not apply for any periods during which Customer received any Service free of charge.

**Necessity of Customer Claim:**

Customer must make a claim for a credit by delivering to NextFort within two (2) days following the occurrence of the event or events giving rise to Customer's claim, written notice of such claim. Customer's failure to timely deliver such notice shall automatically extinguish Customer's right to credits with respect to such event or events.

v 10.23.14

**Exhibit B to Master Services Agreement**
**Dated December ___, 2014**
**Description of Remote Hands Services**

Remote hands services allows the Customer to have NextFort Chandler or its contractors or agents perform the following maintenance tasks at any hour of the day, in all cases with the Customer being obligated to provide a detailed description of the exact action required:

- Pushing a button

- Switching a toggle or setting a dipswitch

- Power cycling (turning on and off) equipment

- Securing cabling connections – twist knobs on cable to secure the connection.

- Cable organization or ties – materials provided by Customer

- Observing, describing or reporting on indicators or display information on machines or consoles – providing reasonable visual feedback to Customer

- Basic observation and reporting on the environment of the Customer's colocation space

- Changing of pre-labeled removable media

- Modifying basic cable layout, such as Ethernet connections

- Labeling and/or re-labeling equipment

- Running single, built-in or external diagnostics equipment

- Typing exact Customer-provided commands on a keyboard

- Addition, removal or replacement of Customer-provided hot-swappable devices or power supply, where the Customer provides the specific and detailed procedures for NextFort Chandler to follow and where the device to be removed, added or replaced is clearly identifiable

- One-for-one swapping of existing server for either replacement server or blanking panel provided by Customer, where the Customer provides the specific and detailed procedures for NextFort Chandler to follow and where the server to be removed, added or replaced is clearly identifiable

- Card swaps and other swaps of replaceable server components, all provided by the Customer, where the Customer provides the specific and detailed procedures for NextFort Chandler to follow and where the component to be swapped is clearly identifiable

Customer must initiate remote hands service required by contacting NextFort Chandler's Data Center Facility Technicians for service. Where the Customer does not use the ticketing system to dispatch remote hands, NextFort Chandler's Data Center Facility Technicians will document the request in the ticketing system. Customer must provide clear, specific and detailed instructions. Failure to provide clear, specific and detailed instructions will generate the need for a technician to contact Customer and will result in additional response time. Certain requests may require written instructions to be provided and/or approved by the Customer prior to remote hands service dispatch.

Response time is estimated to be 15 minutes to one (1) hour, depending on current conditions and load. In no event shall NextFort Chandler or its contractors and/or agents be liable for any interruptions in service or damages caused by, or attributed to, the remote hands service provided by NextFort Chandler and/or its contractors or agents. If after one (1) hour of a properly authorized, clear, specific, written and detailed instruction to commence a remote hands operation, Customer's request has not been resolved, the incident will be escalated to the Data Center Facility Manager.

In all cases, if the remote hands operation involves removal of a piece of equipment, the Customer must store it in the Customer's colocation space or arrange for the shipping or other storage of the equipment, at Customer's expense.

v 10.23.14

Exhibit C to Master Services Agreement
Dated December 31, 2014
Single Point of Contact Form

v 10 23 14



DISCOVER A GREENER INTERNET

### Metered Power Addendum to Master Services Agreement

This Addendum (this "**Addendum**") to the NextFort Ventures Chandler Master Services Agreement (the "**Agreement**") by and between NextFort Ventures Chandler, LLC, a Nevada limited liability company ("**NextFort**"), and the customer identified below ("**Customer**"), is attached to and incorporated in the Agreement effective as of the date set forth below (the "**Effective Date**"). Capitalized terms used but not defined herein shall have their defined meanings set forth in the Agreement. In the event of a conflict between this Addendum and the Agreement and/or any Service Order Form, this Addendum shall govern.

**1.         Customer's Usage-Based Power Services.** Subject to the terms and conditions of the Agreement and this Addendum, NextFort shall furnish (1) the electric capacity to Customer's suite(s) in accordance with the description in Customer's Service Order Form(s) for the service(s) entitled "Critical IT Power Capacity in KW" in order to provide power to Customer's colocated equipment, in-suite lighting, fire suppression and monitoring ("In-Suite Power Distribution"), and (2) electrical capacity to the suite(s) to provide HVAC and humidity control. Actual usage in Customer's suite(s), or by equipment attached to and used exclusively by Customer's suite(s) (including but not limited to HVAC and humidity control systems) is metered using electrical metering devices ("Customer's Meters"). Customer shall have no right or ability to provide its own power or power distribution other than in-suite rack power distribution units.

**2.         Payment for Customer's Usage-Based Power Charges.** NextFort shall take the sum of the meter readings on Customer's Meters to determine Customer's total kWh consumed during the billing period ("Customer's Usage"). Customer's payment due to NextFort for Customer's Usage shall be the Customer's proportionate share, based on Customer's Usage, of all amounts charged to NextFort by the electric utility provider for electricity provided to the data center for such period, including without limitation, any sales, privilege, excise or similar taxes applicable thereto and any other charges, whether based on usage or otherwise.

If during any period during the term of the Agreement, electrical service is supplied by a back-up generator, NextFort may calculate Customer's share of the cost of operation of the generator in determining the usage-based power payment due, based on a reasonable allocation of such costs to Customer. Customer's invoice for usage-based power shall be due and payable as provided in the Agreement.

NOTWITHSTANDING THE ACTUAL CAPACITY OF THE ELECTRICAL PANELS AND/OR STARLINE BUSWAYS IN THE SUITE(S) IN WHICH CUSTOMER'S EQUIPMENT IS COLOCATED, CUSTOMER'S CONTRACTED "CRITICAL IT POWER CAPACITY IN KW" IS AS SET FORTH IN THE CUSTOMER'S SERVICE ORDER FORM(S) AND ADDITIONAL CHARGES APPLY FOR ELECTRICAL CONSUMPTION IN EXCESS OF THIS AMOUNT, AS PROVIDED BELOW. IN ADDITION, LIMITATIONS AND CONSEQUENCES FOR EXCEEDING THIS "CRITICAL IT POWER CAPACITY IN KW" AND ANY "PER SUITE MAXIMUM POWER CAPACITY IN KW" (APPLICABLE TO A MULTIPLE-SUITE CUSTOMER) ARE SET FORTH BELOW.

**3.         Additional Charges and Consequences for Power Use In Excess of Contracted Capacity.** Customer acknowledges that its base charges for services provided by NextFort are based upon its contracted "Critical IT Power Capacity in KW" and further, that the electrical capacity and back-up power generation capacity within the data center are or will be reserved for other customers in the data center. Customer further acknowledges that if Customer exceeds its Critical IT Power Capacity in KW, it could jeopardize NextFort's ability to deliver electricity and other services to, and thereby negatively impact, other customers. Accordingly, if the sum of Customer's In-Suite Power Distribution electrical consumption in its suite(s), measured in kilowatts (Customer's "In-Suite Electrical Consumption"), at any time or times in Customer's invoicing period exceeds the total "Critical IT Power Capacity in KW" as set forth in the Customer's Service Order Form(s) related to Customer's suite(s), in addition to paying the usage-based power charges for such power as described above, Customer shall pay NextFort an excess usage fee equal to $250 multiplied by the difference, measured in kilowatts, between the highest In-Suite Electrical Consumption during the Customer's electrical invoicing period and the "Critical IT Power Capacity in KW" in the Customer's Service Order Form(s) related to such suite(s) (the "**Excess Usage Fee**") Furthermore, if Customer's In-Suite Electrical Consumption at any time or times exceeds one hundred and twenty-five percent (125%) of the total "Critical IT Power Capacity in KW" in the Customer's Service Order Form(s) related to such suite(s), in addition to and in combination with any other remedies available to NextFort under the Agreement, or at law or in equity, NextFort is under no obligation to provide such power and NextFort may interrupt (without a requirement of prior notice), reduce/cap or turn down some or all of Customer's electrical service to Customer's colocation space within such suite(s) without liability to Customer. Usage by Customer beyond its contracted "Critical IT Power Capacity in KW," and/or usage in any one suite beyond any applicable "Per Suite Maximum Power Capacity KW" limit specified in any Service Order Form(s) may also invalidate Service Level Agreements, as provided in Customer's Service Level Agreement.

IN WITNESS WHEREOF the parties have executed this Addendum by their duly authorized representatives effective as of <u>Dec 31, 2014</u>, 201_

NextFort Ventures Chandler, LLC
by NextFort Ventures, LLC, Manager

By: _____
Mark E. Towfiq
Manager, NextFort Ventures, LLC
16511 Scientific Way
Irvine, California 92618

CUSTOMER: Limelight Networks, Inc.
222 South Mill Avenue, Suite 800
Tempe, Arizona 85281

By: _____
Name: _____
Title: _____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Edgio, Inc., *et al.*, | Case No. 24-11985 (KBO) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: Docket Nos. 603 & 849** |

**ORDER AUTHORIZING THE DEBTORS TO REJECT CERTAIN
EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES**

Pursuant to and in accordance with the *Order (I) Authorizing and Approving Procedures to Reject Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 603] (the "***Rejection Procedures Order***") entered in the Chapter 11 Cases; and it appearing that the *Notice of Rejection of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 849] (the "***Rejection Notice***") satisfies the requirements set forth in the Rejection Procedures Order; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that venue of this proceeding and the Rejection Notice in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Rejection Notice and opportunity for a hearing were

---

[1] The Debtors operate under the trade name Edgio and have previously used the trade names Limelight, Edgecast and Layer0. The Debtors in these chapter 11 cases (the "***Chapter 11 Cases***"), along with the last four digits of each Debtor's federal tax identification number, are: Edgio, Inc. (7033); Edgecast Inc. (6704); Edgio International, Inc. (3022); Limelight AcquisitionCo, Inc. (6138); Limelight Midco, Inc. (1120); Limelight Networks VPS, Inc. (3438); and Mojo Merger Sub, LLC (7033). The Debtors' service address for purposes of these Chapter 11 Cases is: 11811 N. Tatum Blvd., Ste. 3031, Phoenix, AZ 85028. Additional information about the Chapter 11 Cases is available at https://omniagentsolutions.com/Edgio.

appropriate under the circumstances and no other notice need be provided; and this Court having

reviewed the Rejection Notice; and this Court having determined that the legal and factual bases

set forth in the Rejection Notice establish just cause for the relief granted herein; and upon all of

the proceedings had before this Court, and after due deliberation and sufficient cause appearing

therefor,

**IT IS HEREBY ORDERED THAT:**

1.    The Contracts set forth in **Exhibit 1** attached hereto are hereby rejected as of the

applicable Rejection Date; *provided* that the effective date of a rejection of a nonresidential real

property lease shall not occur until the later of (i) the date the Debtors file and serve a Rejection

Notice for such lease, (ii) the Rejection Date set forth in the Rejection Notice, and (iii) the date the

Debtors relinquish control of the premises by notifying the affected landlord in writing of the

Debtors' surrender of the premises and turning over keys, key codes, and security codes, if any, to

the affected landlord.

2.    Consistent with the *Order Establishing Bar Dates and Related Procedures for

Filing Proofs of Claim (Including for Administrative Expense Claims Arising Under Section

503(b)(9) of the Bankruptcy Code) and Approving the Form and Manner of Notice Thereof*

[Docket No. 140] (the "***Bar Date Order***"), if any Rejection Counterparty to a Contract asserts a

claim against the Debtors arising from the rejection of such Contract, the applicable Rejection

Counterparty must file a proof of claim on or before the later of (a) March 10, 2025 at 11:59 p.m.

(prevailing Eastern Time) only if the Rejection Counterparty to such Contract is a Governmental

Unit (as defined in the Bar Date Order) or (b) 11:59 p.m. (prevailing Eastern Time) on the date

that is thirty-three days from the date of the entry of this Order. If no proof of claim is timely filed,

such claimant shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution in connection with the Chapter 11 Cases.

3.      Nothing contained in the Rejection Notice or this Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Rejection Notice or this Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

4.      All rights and defenses of the Debtors are preserved, including all rights and defenses of the Debtors with respect to a claim for damages arising as a result of a Contract rejection, including any right to assert an offset, recoupment, counterclaim, or deduction. In addition, nothing in this Order or the Rejection Notice shall limit the Debtors' ability to subsequently assert that any particular Contract is terminated and is no longer an executory contract or unexpired lease, respectively.

5.      To the extent any property of Hivelocity LLC ("*Hivelocity*") is implicated by the rejection of a Contract set forth in **Exhibit 1** attached hereto, the automatic stay imposed in the Chapter 11 Cases by section 362(a) of the Bankruptcy Code is hereby modified solely for the limited purpose of permitting Hivelocity and owners, operators, and personnel of data centers parties to Contracts with the Debtors to repatriate such property owned by Hivelocity (such property, "*Hivelocity Equipment*").  For the avoidance of doubt, consistent with the limited modification of the automatic stay set forth in this paragraph 5, data center owners, operators, and personnel are permitted from an after the applicable Rejection Date of a Contract set forth in **Exhibit 1** attached hereto to cooperate directly with Hivelocity regarding the repatriation of Hivelocity Equipment, if any, without further order of this Court solely with respect to any Contract set forth in **Exhibit 1** attached hereto.

6.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

7.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: April 21st, 2025
Wilmington, Delaware

*Ka B. O*

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**

4

RLF1 32351186v.1

**EXHIBIT 1**

**Rejected Contracts**

| No | Counterparty Name | Counterparty Address | Contract Description | Debtor party to contract | Rejection Date |
|----|-------------------|----------------------|----------------------|--------------------------|----------------|
| 1 | AAPT Limited | G.P.O. Box 3641, Sydney 0 AU, NSW 1044 | Network Interconnection Agreement | Edgio, Inc. | 3/31/2025 |
| 2 | Gong.io Inc | PO Box 190250 San Francisco CA US 94119 | Terms and Conditions, Purchase Order #'s: GONG-49416 & GONG-143390 | Edgio, Inc. | 3/31/2025 |
| 3 | H5 Data Centers - Chandler, LLC | 9320 Wilshire Blvd. Suite 300, Beverly Hills CA 90212 | Master Services Agreement dated December 31, 2014 between NextFort Ventures Chandler, LLC (assigned to H5 Data Centers - Chandler, LLC) and Limelight Networks, Inc. and related Service Orders thereunder | Edgio, Inc. | 3/31/2025 |
| 4 | Hivelocity, Inc. | 8010 Woodland Center Blvd Suite # 700 Tampa FL US 33614 | Master Agreement dated as of December 5, 2018, by and between Hivelocity and Debtor Edgio, Inc. f/k/a Limelight Networks, Inc and related amendments, supplements, or modifications | Edgio, Inc. | 3/31/2025 |
| 5 | Hivelocity, Inc. | 8010 Woodland Center Blvd Suite # 700 Tampa FL US 33614 | Master Services Agreement dated as of December 13, 2019 by and between Hivelocity and Debtor Edgio, Inc. f/k/a Limelight Networks, | Edgio, Inc. | 3/31/2025 |

| | | | Inc. and related amendments, supplements, or modifications | | |
|---|---|---|---|---|---|
| 6 | Hivelocity, Inc. | 8010 Woodland Center Blvd Suite # 700 Tampa FL US 33614 | Master Resale Agreement, dated as of May 14, 2019, by and between Hivelocity and Debtor Edgio, Inc. f/k/a Limelight Networks, Inc. and related amendments, supplements, or modifications | Edgio, Inc. | 3/31/2025 |
| 7 | Intralinks, Inc. | 622 Third Avenue, 10th Floor New York, NY 10017 | Each Executory Contract | Edgio, Inc. | 3/31/2025 |
| 8 | Jfrog, Inc | Attn: Chuck Chukwukekwu 270 E Caribbean Dr, Sunnyvale, CA 94089 | Order Form | Edgio, Inc. | 3/31/2025 |
| 9 | KT Corp | 90 Bulljeong-ro (206 Jungia-dong),Bundang-gu, Seongnam-city, GyeongGi-Do, 13606 | Fifth Amended and Restated Service Order IP Domestic Transit Services | Edgio, Inc. | 3/31/2025 |
| 10 | SELLNET | 321 Rte 29 Tallman, NY 10982 | Sales Referral Agreement | Edgio, Inc. | 3/31/2025 |

2

RLF1 32351186v.1

UNITED STATES BANKRUPTCY COURT DISTRICT OF DELAWARE

**Edgio, Inc. - Case No. 24-11985**

**FILED**

Claim No. 295

**May 23, 2025**

By Omni Claims Agent
For U.S. Bankruptcy Court
District of Delaware

Official Form 410

# Proof of Claim

12/24

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

Carefully read instructions included with this Proof of Claim before completing. In order to have your claim considered for payment and/or voting purposes, complete ALL applicable questions.

## Part 1:    Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | H5 Rockwell Management, LLC<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor    H5 Cleveland, LLC, H5 Cleveland #2, LLC, & H5 Data |
| **2. Has this claim been acquired from someone else?** | ☒ No<br>☐ Yes    From whom? |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| H5 Rockwell Management, LLC | |
| Name | Name |
| 9320 Wilshire Blvd. Suite 300 | |
| Number        Street | Number        Street |
| Beverly Hills, CA 90212 | |
| City              State              ZIP Code | City              State              ZIP Code |
| Contact Phone   (310)275-1395 | Contact Phone |
| Contact email    ldoverspike@simmsmann.com | Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one)

| | |
|---|---|
| **4. Does this claim amend one already filed?** | ☐ No<br>☒ Yes      Claim Number on court claims registry (if known) 294      Filed On 5/22/2025<br>MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☒ No<br>☐ Yes      Who made the earlier filing? |

## Part 2:    Give Information About the Claim as of the Date the Case Was Filed

**6.** **Do you have any number you use to identify the debtor?**

[X] No

[ ] Yes   Last 4 digits of the debtor's account or any number you use to identify the debtor: _____

**7.** **How much is the claim?**    $ 9,380.00    **Does this amount include interest or other charges?**

[X] No

[ ] Yes    Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information

REMAINING LEASE FROM 3/31/2025 REJECTED CONTRACT.

**9.** **Is all or part of the claim secured?**

[X] No

[ ] Yes    The claim is secured by a lien on property

**Nature of property:**

[ ] Real Estate   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*

[ ] Motor Vehicle

[ ] Other    Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.

**Value of Property:** $ _____

**Amount of the claim that is secured:** $ _____

**Amount of the claim that is unsecured:** $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7).

**Amount necessary to cure any default as of the date of the petition:** $ _____

**Annual Interest Rate:** (when case was filed) _____%

[ ] Fixed

[ ] Variable

**10.** **Is this claim based on a lease?**

[ ] No

[X] Yes    **Amount necessary to cure any default as of the date of the petition.** $ 9,380.00

**11.** **Is this claim subject to a right of setoff?**

[X] No

[ ] Yes    Identify the property: _____

**12.** **Is this claim for the value of goods received by the debtor within 20 days before the commencement date of this case (11 U.S.C. §503(b)(9)?**

[X] No

[ ] Yes    Amount of 503(b)(9) Claim: $ _____

**13. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

[X] No

[ ] Yes    *Check all that apply*

**Amount entitled to priority**

[ ] Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$ ____

[ ] Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$ ____

[ ] Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$ ____

[ ] Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$ ____

[ ] Contributions to an employee benefit plan 11 U.S.C. § 507(a)(5).

$ ____

[ ] Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

$ ____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

| **Part 3:** | **Sign Below** |
|---|---|

The person completing this proof of claim must sign and date it.

**FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

[X] I am the creditor.

[ ] I am the creditor's attorney or authorized agent.

[ ] I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

[ ] I am the guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  5/23/2025
_____
MM / DD / YYYY

Bethany House
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Bethany House |
| | Full Name |
| Title | Attorney - Contract |
| Company | H5 Rockwell Management, LLC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 9320 Wilshire Blvd. Suite 300 |
| | Number          Street |
| | Beverly Hills, CA 90212 |
| | City          State          ZIP Code |
| Contact Phone | (310)275-1395          Email  bethany.house@h5datacenters.com |

H5 Rockwell
Bethany House
3320 Wilshire Bl
Beverly Hills, CA 90212



Clerk's Office
Delaware Bankruptcy Court
824 N. Market St., 3rd Fl
Wilmington, DE 19801

9589 0710 5270 2306 8899 42

CERTIFIED MAIL®

FIRST-CLASS



FIRST-CLASS

