## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EDGIO, INC., *et. al.*, | ) Case No. 24-11985-KBO |
| | ) |
| | ) (Jointly Administered) |
| | ) |
| Debtors. | ) Hearing Date: TBD |
| | ) Objection Deadline: September 4, 2025 |
| | ) at 4:00 p.m. ET |
| | ) Re: Docket Nos. 957, 958 & 1061 |

### AMAZON.COM SERVICES LLC'S MOTION FOR
### REIMBURSEMENT OF POST-PETITION OVERPAYMENT

Amazon.com Services LLC ("Amazon") files this motion (the "Motion") for reimbursement of post-petition overpayment from Debtor Edgio, Inc. (the "Debtor" or "Edgio") pursuant to 11 U.S.C. § 503(b). In support of this Motion, Amazon submits the concurrently filed Declaration of Steve Beranek ("Beranek Decl.") and the Declaration of Michael J. Gearin ("Gearin Decl."), and Amazon respectfully represents the following:

### INTRODUCTION

As explained below and in the Declaration filed herewith, Amazon ordered certain content delivery network ("CDN") services from the Debtor pursuant to a Master Telecommunications Services Agreement and related service and purchase orders (collectively, the "MTSA"). On November 19, 2024, the Debtor issued a post-petition incentive credit of $1,406,000 under the MTSA that was to be deducted from payments for service charges invoiced to Amazon. Amazon, after the commencement of this case, continued to order CDN services from the Debtor and continued to pay the Debtor for such services. Due to an oversight, Amazon failed to deduct the incentive credit from post-petition payments made to Edgio through and including March 2025. As a result, Amazon overpaid the Debtor by $1,406,000. Amazon brought the overpayment to the

attention of the Debtor in May 2025 and requested reimbursement for the overpayment. Notwithstanding repeated requests, the Debtor has thus far refused to refund the overpayment and has forced Amazon to bring this Motion to obtain reimbursement for the excess value it conferred on the Debtor's bankruptcy estate.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

2.     Venue of the Debtors' bankruptcy cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3.     The statutory predicate for the relief requested herein is Section 503(b) of the United States Bankruptcy Code.

## BACKGROUND

4.     The Debtor provides technology services that support delivery of video and other content through the internet. On September 9, 2024, (the "Petition Date"), the Debtor and its affiliates (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* in the United States Bankruptcy Court for the District of Delaware.

5.     Amazon is a worldwide leader in the provision of technology services. Beranek Decl. ¶ 3. Prior to the Petition Date, on May 12, 2020, Amazon and the Debtor entered into the MTSA. *Id.* Under the MTSA, Amazon agreed to pay the Debtor in exchange for the Debtor providing CDN services Amazon as part of Amazon Prime's video content delivery to consumers.

*Id.* CDN services provide technical capacity to Amazon in its delivery of video content to its customers. *Id.*

6.      Under a CDN Service Order No. 00211498 dated May 1, 2024 (the "May 1 Service Order"), which was a supplement to the MTSA, Amazon agreed to pay the Debtor for CDN services the Debtor was to provide for the period of May 1, 2024, through April 30, 2026. Beranek Decl., ¶ 4. Section 14 of the May 1 Service Order grants Amazon Incentive Credit as follows:

> Contractor [(*i.e.*, Debtor)] will apply a total credit of $1,406,000 against any and all charges invoiced to Amazon in the October 31, 2024 invoice for Services under this Order Incentive Credit. If the Incentive Credit is not applied in full as aforesaid, then Contractor will refund to Amazon the amount of outstanding Incentive Credit no later than November 30, 2024.

*Id.* ¶ 4, Ex. 1.

7.      The Debtor continued to provide CDN services to Amazon under the MTSA on a post-petition basis. *Id.* ¶ 5. The Debtor issued a credit memo to Amazon dated November 19, 2024, recognizing the Incentive Credit. *Id.* Ex. 1. Amazon continued to make payments to the Debtor for CDN services on a post-petition basis. *Id.* ¶ 5. Due to its oversight, Amazon did not deduct the Incentive Credit of $1,406,000 from post-petition payments made after November 19, 2024. *Id.* Amazon made payments totaling $9,737,432.01 to the Debtors between December 2024 and March 2025 without deduction of the issued credit resulting in an overpayment to the Debtor of $1,406,000. *Id.* ¶ 6.

8.      After commencement of these Chapter 11 Cases, the Debtors undertook efforts to sell substantially all of their assets and ultimately obtained approval of multiple sales of certain of their assets, including the sale of the Debtors Apps and Content Delivery businesses to Akamai Technologies, Inc. ("Akamai") on November 26, 2024. *See* Dkt. No. 429.

9.      In connection with the Debtors' sale to Akamai, on December 13, 2024, the Debtor filed a *Notice of Designation of Executory Contracts or Unexpired Leases Pursuant to the Asset*

*Purchase Agreement with Respect to the Apps & Security and Network Business*. Dkt. No. 487

(the "<u>Notice of Designation of Executory Contracts</u>"). The Debtors' Notice of Designation of

Executory Contracts designated the May 1 Service Order for assumption and assignment to

Akamai. Dkt. No. 487-1, at 1.

10.      Prior to such assumption and assignment, Amazon continued to pay the Debtor for

its CDN services. Beranek Decl. ¶ 6. This included the following payments made by Amazon to

the Debtor prior to the filing of the Notice of Designation of Executory Contracts:

| Date | Amount | Invoice Number |
|---|---|---|
| December 2, 2024 | $2,194.01 | 11495410 |
| December 2, 2024 | $5,694.86 | 11495343 |
| December 2, 2024 | $2,616,312.14 | 11495344 |

*Id.*

11.      Following assumption and assignment, Amazon continued to pay the Debtor for its

CDN services.[1] *Id.* This included the following payments made by Amazon to the Debtor after the

filing of the Notice of Designation of Executory Contracts:

| Date | Amount | Invoice Number |
|---|---|---|
| January 2, 2025 | $9,440.13 | 11539691 |
| January 2, 2025 | $2,168,194.93 | 11539692 |
| January 30, 2025 | $12,187.61 | 11584016 |
| January 30, 2025 | $2,535,040.28 | 11584017 |
| March 4, 2025 | $20,189.46 | 11628350 |
| March 4, 2025 | $2,362,766.90 | 11628351 |
| March 21, 2025 | $2,592.90 | 11584083 |
| March 21, 2025 | $2,818.79 | 11628417 |

*Id.* Amazon paid the amounts referenced above to the Debtors, without deduction of the issued

Incentive Credit. *Id.* As a result, Amazon overpaid the Debtor's bankruptcy estate (the "<u>Estate</u>")

by a total of $1,406,000. *Id.*

---

[1] Amazon's records reflect transfer of these payments to the Debtor's bank account.

12.     Prior to filing this Motion, Amazon's counsel attempted to resolve this issue with the Debtor by seeking confirmation from the Debtor's counsel that Amazon would be compensated for the overpayment. *See generally* Gearin Decl. However, Debtor's counsel did not confirm the Debtor would compensate Amazon for the overpayment, forcing Amazon to file this Motion. *Id.*

## RELIEF REQUESTED

13.     Amazon brings this Motion requesting entry of an order allowing its claim in the amount of $1,406,000 for this overpayment, as an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A), and directing the Debtor to reimburse Amazon for the overpayment.

## AUTHORITY

14.     "After notice and a hearing, there shall be allowed administrative expense, including the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). "Section 507 of the Bankruptcy Code affords *first priority* to administrative expenses to encourage the provision of goods and services to the estate, and to compensate those who expend new resources attempting to rehabilitate the estate." *In re Carpet Center Leasing Co., Inc.*, 991 F.2d 682, 685 (11th Cir.1993) (emphasis added). "[I]f a reorganization is to succeed, creditors asked to extend credit after the petition is filed must be given priority so they will be moved to furnish the necessary credit to enable the [debtor] to function." *In the Matter of Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir. 1984) (citing *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976)).

15.     "The two part test for determining whether a debt should receive administrative priority requires that the debt both (1) arise from a transaction with the debtor-in-possession, and (2) is beneficial to the debtor-in-possession in the operation of the business." *In re Moltech Power Sys., Inc.*, 273 B.R. 268, 271 (Bankr. N.D. Fla. 2002) (citing *Jartran*, 732 F.2d at 586–87). When

a third party transacts with the debtor on a post-petition basis on ordinary commercial terms, such party is entitled to an administrative priority claim under Section 503(b)(1) of the Bankruptcy Code. *See Pennsylvania Dep't of Envtl. Res. v. Tri-State Clinical Labs., Inc.*, 178 F.3d 685, 690 (3d Cir. 1999) (stating that administrative expense claims "include costs ordinarily incident to operation of a business, and not be limited to costs without which rehabilitation would be impossible"). Moreover, actions of the debtors that began pre-petition yet continued post-petition give rise to post-petition claims for the post-petition period. *See In re Mallinckrodt PLC*, 2021 Bankr. LEXIS 2887, 2021 WL 4876908 (JTD) (Bankr. D. Del. Oct. 19, 2021). And further, a party who makes post-petition advances to a debtor in the ordinary course of business are appropriately recoverable as administrative claims, because they benefit the estate in its ongoing operations and attempt at reorganization. *See, e.g.*, *In re S. Soya Corp.*, 251 B.R. 302, 310 (Bankr. D.S.C. 2000) ("The loan that The Exchange Bank extended to Debtor was an 'actual' and 'necessary' expense which benefitted the estate."); *see also In re Swallen's, Inc.*, 210 B.R. 120, 121 (Bankr. S.D. Ohio 1997) (stating that the debtor did not dispute that Bank was entitled to reimbursement of post-petition chargebacks from debtor-retailer for returned or defective goods).

16.    Here, Amazon continued to transact with the Debtor under the Service Order on a post-petition basis through the date of assumption and assignment. The Incentive Credit was issued post-petition and payments made to the Debtor including the overpayment were made post-petition. Thus, Amazon's overpayment occurred as part of post-petition transactions with the Debtor. Amazon's substantial post-petition payments to the Debtor provided the Estate with $1,406,000 in funds that it was not entitled to receive and that the Debtor retains in the Estate. As a result, the overpayment benefited the Estate. Amazon is entitled to restitution of the overpaid amounts.

17.    Based on the foregoing, Amazon respectfully requests that the Court allow its claim in the amount of $1,406,000 for the overpayment, which benefitted the estate, as an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A) and direct the Debtor to reimburse Amazon for the overpayment.

### RESERVATION OF RIGHTS

18.    The filing of this Motion shall not be construed as a waiver or release of any of Amazon's claims, rights, or remedies that are not specifically identified in this Motion and/or claims that may become due and owing to Amazon after the Motion. Amazon hereby reserves the right to pursue enforcement of its rights to recover the overpayment from any party other than the Debtor that received the overpaid amounts. Amazon further reserves the right to supplement or amend this Motion in any manner and for any purpose.

### CONCLUSION

19.    WHEREFORE, Amazon respectfully requests that this Court enter an order allowing its claim in the amount of $1,406,000 for this overpayment as an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A) and directing the Debtor to reimburse Amazon for the overpayment and granting such other relief as the Court may deem appropriate.

Dated: July 30, 2025

**K&L GATES LLP**

/s/ *Matthew B. Goeller*
Matthew B. Goeller (No. 6283)
600 N. King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7080
matthew.goeller@klgates.com

*Attorneys for Amazon.com Services LLC*